IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 23, 2002

## STATE OF TENNESSEE v. TRACY WASHINGTON

**Direct Appeal from the Circuit Court for Rhea County**
**No. 15553      Thomas W. Graham, Judge**

_____

**No. E2001-02817-CCA-R3-CD**
**July 7, 2003**
_____

A Rhea County grand jury indicted the defendant on one count of sexual battery. At the conclusion of a trial, the jury convicted him as charged and fined him one thousand dollars. The trial court subsequently imposed a sentence of one year and six months, of which the defendant was ordered to serve thirty days.[1] After unsuccessfully pursuing a judgment of acquittal or alternatively a new trial in the trial court, the defendant brings this appeal. Herein, he asserts that the record lacks sufficient evidence to sustain his conviction, that the trial court erred in failing to give the jury a curative instruction to disregard a hearsay statement made by the victim in court, and that the trial court erred in permitting the victim's brother to testify regarding a hearsay statement made by the victim. After reviewing the record and relevant authorities, we find that the defendant has waived one of these claims and that the remaining issues merit no relief. We, therefore, affirm the defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

J. Shannon Garrison, Dayton, Tennessee, for appellant, Tracy Washington.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Will Dunn, Assistant District Attorney General, for appellee, State of Tennessee.

---

[1] The judgment reflects that work release service of this time is permissible and sets out additional conditions of the defendant's probation.

# OPINION

## Factual Background

No dispute exists that the defendant and Mary Tillotson, the victim, met for the first time on July 21, 2000. These individuals further agree that the victim lived near Gwendolyn Garmany, also known as "Pup", and that the defendant had asked the victim if she knew where Pup might be that afternoon. However, from this point the accounts for the most part radically diverge.

The victim recounts that after having this conversation, she turned and entered her home and that the defendant, uninvited, followed her. Before she became aware that he had done so, he came up behind her and "scooted" her into a bedroom. There he pushed her against a wall, ran his hands on top of her shirt over her breasts, and tried to undo her pants. The victim further indicated that the defendant had asked her if she wanted to see his "dick." When she told the defendant that she was married, the defendant stated that he was also. According to her testimony, the victim implored the defendant to stop numerous times; however, he apparently did not do so until she told him that he needed to go because her brother had arrived. On cross-examination she acknowledged that she had not screamed or attempted to harm the defendant but explained that she had been afraid to do so and that she did not want her children involved.

In contrast, the defendant recounts that his and the victim's conversation had quickly turned to drug usage. After learning that he had cocaine that he was willing to share with her, the victim allegedly granted him permission to enter her home. The defendant added that they ultimately had passed through the living room into a bedroom in order to snort the cocaine.[2] As they partook of the cocaine, the defendant recounted that the conversation included acknowledgments that both were married, and the victim asked to purchase some cocaine from the defendant in order to share with her husband. According to the defendant, he indicated that he did not sell drugs but would give her some if she would "show [him] something." The defendant further testified that while originally refusing to do so, the victim later "pulled her pants down and showed me, and pulled them back up" after doing additional cocaine and telling the defendant that he could not tell anyone. Immediately thereafter she informed him that he needed to leave as her brother had arrived. Beyond simply providing this account within his testimony, the defendant specifically denied touching the victim other than shaking her hand when they had met.

In addition to the proof offered by these individuals, the victim's brother, an eleven-year-old boy who lived in the neighborhood, the investigating officer, one of the defendant's friends, the defendant's pastor, and the defendant's wife testified at the trial.[3] And as previously referenced, the jury convicted the defendant of sexual battery upon hearing all of the evidence presented.

---

[2] Though the defendant asserted that they had gone to the bedroom to avoid consuming the drug in the presence of the victim's children, he acknowledged that one of the children had been asleep in that bedroom while they had snorted cocaine.

[3] We will not address the testimony of these individuals in detail here but will reference relevant portions thereof as necessary in our analysis of the defendant's specific issues.

**Sufficiency**

Through his first issue the defendant contends that the proof is insufficient to support his conviction. More specifically, the defendant argues that the victim's account of what had transpired is "wholly inconsistent with [her] being the victim of a sexual battery."

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. While the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded," case law provides that "a criminal offense may be established exclusively by circumstantial evidence." State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); see also, e.g., State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987).

Turning to the language of the statute relevant to the challenged conviction, Tennessee Code Annotated section 39-13-505, in pertinent part, provides that "[s]exual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by . . . [f]orce or coercion . . . used to accomplish the act." Tenn. Code Ann. § 39-13-505(a)(1). The code further states that

> "[s]exual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Id. § 39-13-501(6). Additionally, "intimate parts" are defined as including "the primary genital area, groin, inner thigh, buttock or breast of a human being." Id. § 39-13-501(2).

Applying these criteria to the proof presented, we readily find sufficient evidence to support the defendant's conviction. The victim testified that the defendant, whom she had just met, physically moved her into a bedroom, pushed her against a wall, and ran his hands over the clothing covering her breasts. He asked her if she wanted to see his "dick." He tried to undo her pants. He ignored her pleas to stop these acts until she informed him that he needed to leave because her

-3-

brother had arrived. When her brother entered the home, the brother found "her bent down crying and . . . holding her little kids." Both the aforementioned eleven-year-old neighbor and the investigating officer testified regarding her distraught state on that afternoon. The record also reflects the disparate sizes of the defendant and the victim. The victim was five foot six inches tall and weighed one hundred twenty pounds while the defendant was at least six feet two inches tall and weighed over two hundred pounds. As noted previously, the defendant also acknowledged his presence inside the victim's home though he disputed what allegedly transpired therein.

In arguing that the victim was not sexually assaulted, the defendant notes the lack of destruction in the location of the alleged assault; the victim's failure to scream for help despite the presence of nearby neighbors; the fact that no weapon was displayed to accomplish the act; the presence of the victim's children in the home at the time of the offense and particularly the presence of a child in the living room through which the defendant allegedly "scooted" the victim, etc. These certainly constituted proper points for argument to the jury before which this matter was tried, but it is obvious the jury rejected those arguments as was their prerogative. We will not second guess that decision on appeal. Nevertheless, the defendant's case is now past the point of closing argument.

Without difficulty, we find that the strongest legitimate view of the evidence supports the above-set-out sexual battery elements. We, thus, conclude that this issue lacks merit.


### Lack of a Curative Jury Instruction


The defendant next asserts that the trial court committed reversible error after the court sustained his objection to the contested statement, but then failed to give a curative instruction to the jury to disregard the victim's testimony that she had told her brother, "I was almost raped." However, we must note at the outset that the defendant's brief cites no authority whatsoever in support of this claim. Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R 10(b). The defendant, therefore, has waived this assertion.

Additionally, a party failing to request a curative jury instruction waives the matter for appellate purposes." See, e.g., State v. Debiasi Sirnard King, No. E2002-00634-CCA-R3-CD, 2003 WL 21261775, at *4 (Tenn. Crim. App. at Knoxville, June 2, 2003); State v. Philpott, 882 S.W.2d 394, 404 (Tenn. Crim. App. 1994); see also Tenn. R. App. P. 36(a). The defendant did not do so here and, thus, waived the matter through this failure also.


### Alleged Improper Admission of Hearsay


Through his third and final issue the defendant avers that the trial court committed reversible error by permitting the victim's brother to testify that she had told him, "The man was touching

me."[4] The defendant contends that the trial court improperly ruled this comment an excited utterance exception to the prohibition against admitting hearsay testimony.

According to the Tennessee Rules of Evidence, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and such statements are "not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 801(c), 802. Among those exceptions to this general prohibition is an excited utterance. Tenn. R. Evid. 803(2). The aforementioned rules define this type of admissible hearsay statement as one "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Id.

From this background case law tends to break down the requirements for a statement's admission as an excited utterance into: 1) the existence of a startling condition or event; 2) the statement's relating to the startling condition or event; and 3) the statement's being "made while the declarant is under the stress or excitement from the" condition or event. State v. Gordon, 952 S.W.2d 817, 820 (Tenn. 1997); see also, e.g., State v. Bobby B. Barrett, No. W1999-02002-CCA-R3-CD, 2000 WL 1840073, at *6 (Tenn. Crim. App. at Jackson, Dec. 12, 2000); State v. Matthew Douglas Cox, No. E1999-00351-CCA-R3-CD, 2000 WL 1562920, at *12-*13 (Tenn. Crim. App. at Knoxville, Oct. 20, 2000). Furthermore, our supreme court has stated that

> [t]he ultimate test is spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication.

State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993). The court also provided that a statement's being responsive to a question will not necessarily preclude it from qualifying as an excited utterance. See, e.g., Gordon, 952 S.W.2d at 820-21; Smith, 857 S.W.2d at 9; State v. Reginald L. Edmonds, No. 02C01-9708-CC-00334, 1998 WL 527232, at *7 (Tenn. Crim. App. at Jackson, Aug. 25, 1998). Finally, we recognize that "[i]t is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996).

Keeping in mind these criteria, we begin our analysis by agreeing that this statement appears to have been offered for the truth of the matter asserted and, therefore, constituted hearsay. We then must next address whether, as the State argues, the statement was also an excited utterance.

Turning specifically to the brother's trial testimony, he related that when he had entered the victim's home on the date in question, the victim had said, "The man." The brother then asked, "What are you talking about?" to which the victim responded, "He ran out the back door." When asked by the prosecution if the victim said anything else to him, this witness added that the victim had stated, "The man was touching me." After hearing his sister make these comments, this witness left the home in search of the defendant. Additional review of the record as a whole reveals that the victim made the contested statement almost immediately after the defendant had run from her home.

---

[4] We find it interesting that when the victim attempted to testify regarding what she had said to her brother as he entered on that day, defense counsel interjected, "Objection to what she told Loyd [the victim's brother]. Let Loyd testify to that," and the lower court sustained that objection. However, when the brother subsequently attempted to relate what the victim had said at that time, defense counsel stated, among other things, "Objection to what she said, Your Honor. She needed to have testified to that on direct-examination."

Her brother further described her as crying, being "totally upset," and looking "really scared" in the aftermath of her encounter with the defendant.

From these facts we conclude that the victim's having been trapped in her home with a stranger running his hands over her breasts qualifies as a startling event. In addition, the contested statement, "[t]he man was touching me," certainly relates to this startling event.[5] Furthermore, the frightened and crying victim made this comment within, at the most, minutes of the defendant's flight from her home. Though the defendant contends that the statement lacks spontaneity since it was made in response to her brother's question, "What are you talking about?" and involved some delay, we remain unpersuaded by this argument. As noted above, case law provides that the mere fact that a statement is made in response to a question does not prevent it from qualifying as an excited utterance. See, e.g., Gordon, 952 S.W.2d at 820-21; Smith, 857 S.W.2d at 9; Reginald L. Edmonds, 1998 WL 527232, at *7. Moreover, any delay in making the statement was minimal compared to that involved in other cases in which our appellate courts have reasonably found a statement to qualify as an excited utterance. See, e.g, State v. Stout, 46 S.W.3d 689, 699-700 (Tenn. 2001); State v. Carl G. Dodd, No. E2001-01304-CCA-R3-CD, 2002 WL 1058202, at *4 (Tenn. Crim. App. at Knoxville, May 28, 2002); State v. Steven Kelly Mezo, No. M2000-02760-CCA-R3-CD, 2002 WL 533951, at *9-*10 (Tenn. Crim. App. at Nashville, Apr.10, 2002); Reginald L. Edmonds, 1998 WL 527232, at *7-*8. Thus, the trial court did not abuse its discretion by admitting this evidence, and this issue merits no relief.

### Conclusion

Based upon the foregoing reasons, we find that the defendant's claims lack merit and/or have been waived. Accordingly, we AFFIRM his conviction for sexual battery.

_____
JERRY L. SMITH, JUDGE

---

[5] We note that the defendant does not contest the presence of either of these requirements.