IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

**FOR PUBLICATION**

**Filed: September 29, 1997**

STATE OF TENNESSEE,               )
                                  )
        Appellee,                 )        DAVIDSON CRIMINAL
                                  )
                                  )
 Vs.                              )        HON. WALTER C. KURTZ,
                                  )               JUDGE
                                  )
MAURICE GORDON,                   )
                                  )
        Appellant.                )        No.  01-S-01-9605-CC-00084

**FILED**

**September 29, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

**For Appellant:**

Jeffrey A. DeVasher
Senior Assistant Public Defender

Joan A. Lawson
Senior Assistant Public Defender

Ross Alderman
Deputy Public Defender
Nashville, Tennessee

**For Appellee:**

Charles Burson
Attorney General & Reporter

Michael E. Moore
Solicitor General

Elizabeth T. Ryan
Assistant Attorney General
Nashville, Tennessee

Victor S. Johnson, III
District Attorney General

Renee Erb
Bill Reed
Assistant District Attorneys General
Nashville, Tennessee

# O P I N I O N

AFFIRMED.                                          ANDERSON, C.J.

We granted this appeal to review two familiar exceptions to the rule which excludes hearsay statements from a trial: statements relating to a startling event or condition made while under the stress of excitement from the event or condition; and statements made for the purpose of medical diagnosis and treatment.

The defendant was convicted of aggravated rape. The trial court ruled that statements made by the victim to her mother were excited utterances and, therefore, admissible under Tenn. R. Evid. 803(2). The trial court also ruled that the victim's statements to a psychologist, which were contained in a report later relied upon by a nurse practitioner, had been made for the purpose of medical diagnosis and treatment and were, therefore, admissible under Tenn. R. Evid. 803(4). The Court of Criminal Appeals affirmed.

We have concluded that the trial court did not abuse its discretion in admitting the victim's statements to her mother as excited utterances. We have also concluded that the State established the required foundation for the admission of the victim's statements to the psychologist pursuant to the medical treatment and diagnosis exception. We, therefore, affirm the Court of Criminal Appeals.

**BACKGROUND**

On May 13, 1991, the three-year-old victim was visiting with her maternal grandparents, her sister, and the defendant (her uncle) at her grandparents' house. Her grandparents and sister were watching television in the living room, and the defendant was watching television in his bedroom.[1] The victim had been in and out of the defendant's room. At one point, the victim went into the

---

[1] A visiting cousin was also watching television in the defendant's bedroom for at least part of the evening.

bathroom and cried out, apparently from pain she experienced when trying to urinate. Her sister and grandmother attended to her; they looked at the victim's genitalia but saw nothing unusual.

The victim's mother (the defendant's sister) was called and she arrived to take the victim and her sister home. After getting a bath, the victim again tried to use the bathroom, and she again cried out from pain. Her mother wrapped her in a towel, placed her on a bed, and saw "bits and tears and dried blood" on the inside of the victim's vaginal area. She asked the victim, "Who made you hurt like this?" The victim initially lowered her head, but after further reassurance, she named the defendant.

The victim was taken to two hospitals that same night, but she refused to be examined. She was referred to Our Kids Clinic, a facility that evaluates cases of suspected child sexual abuse, and was taken there the next morning. At the clinic, the victim was interviewed by a psychologist who took a history containing the victim's statements. The history was used by a nurse practitioner who conducted a physical examination of the victim. Although the psychologist did not testify at trial, the nurse practitioner was permitted to read the interview[2] into evidence.

The nurse practitioner testified that the victim had two "breaks in the skin inside the labia major but outside the vagina," which were "very superficial." She said that the injuries were consistent with having been caused by the touch or scrape of a finger, and that they appeared to have been caused within the past twenty-four hours. She conceded that the injuries could have been caused in some other manner.

_____

[2] The history itself was also introduced as an exhibit.

The victim testified that she had been in the defendant's room when he pulled down her pants and touched her with his finger. The defendant testified and denied the allegation. The defendant's father (the victim's grandfather) testified that he, his wife, and the victim's sister had been watching television in the living room, and the defendant had been watching television in his bedroom. The house was a small, single-story home with two bedrooms, a living room, kitchen, and bathroom. The victim was in and out of the living room and the defendant's bedroom. The victim did not at first tell anyone that the defendant had hurt her, and no one knew anything was wrong until the victim experienced pain while trying to urinate.

The trial court admitted the victim's statement to her mother as an excited utterance under Tenn. R. Evid. 803(2), and the victim's statements to the child psychologist as statements for medical diagnosis and treatment under Tenn. R. Evid. 803(4). The jury convicted the defendant and the judgment was affirmed by the Court of Criminal Appeals. We granted this appeal and now affirm.

### EXCITED UTTERANCE

Pursuant to Tenn. R. Evid. 803(2), statements "relating to a startling event or condition made while the declarant is under the stress of excitement caused by the event or condition" are admissible as an exception to the hearsay rule. The rationale for admitting such statements, known as "excited utterances," is twofold:

> First, since this exception applies to statements where it is likely there was a lack of reflection-- and potential fabrication-- by a declarant who spontaneously exclaims a statement in response to an exciting event, there is little likelihood, in theory at least, of insincerity. . . . Second, ordinarily the statement is made while the memory of the event is still fresh in the declarant's mind. This means that the out-of-court statement about an event may be more accurate than a much later in-court description of it.

-4-

Cohen, Paine & Sheppeard, Tennessee Law of Evidence, § 803(2).1 at 532 (3d ed. 1995). Thus, we review the requirements of the rule with this rationale in mind.

First, there must be a startling event or condition. As noted in Tennessee Law of Evidence, the "possibilities are endless" because "any event deemed startling is sufficient." Id., § 803(2).2 at 533. As another treatise has stated, the "event must be sufficiently startling to suspend the normal, reflective thought processes of the declarant." McCormick on Evidence, § 297 at 854 (3d ed. 1984). Although the "startling event" is usually the act or transaction upon which the legal controversy is based, such as an assault or accident, the exception is not limited to statements arising directly from such events; rather, a subsequent startling event or condition which is related to the prior event can produce an excited utterance. See Bayne v. State, 632 A.2d 476 (Md. App. 1993)(and cases cited therein).

In United States v. Napier, 518 F.2d 316 (9th Cir.), cert. denied, 423 U.S. 895 (1975), the victim was beaten and hospitalized. Upon returning home, she saw a photograph of the defendant and said, "He killed me." The Court held that the statement was an excited utterance related to the startling event of seeing the defendant's picture. Id. at 318. Similarly, in State v. Carpenter, 773 S.W.2d 1 (Tenn. Crim. App. 1989), the victim's statement occurred not when she discovered a theft of money, but rather when the defendant returned to the scene of the offense. The Court of Criminal Appeals determined that the victim's "comments resulted from the suspect's return to the scene rather than the theft itself" and that the statements were "so spontaneous as to embody all the required elements of reliability." Id. at 9; see also State v. Owens, 899 P.2d 833 (Wash. App. 1995), aff'd, 913 P.2d 366 (Wash. 1996); State v. Meyer, 694 S.W.2d 853 (Mo. App. 1985).

The second requirement, that the statement "relate to" the startling event or condition, is likewise broad. As stated in Tennessee Law of Evidence, supra, "considerable leeway is available," because the statement "may describe all or part of the event or condition, or deal with the effect or impact of that event or condition." Id., § 803(2).2 at 534.

The third requirement, that the statement be made while the declarant is under the stress or excitement from the event or condition, relates most directly to the underlying rationale for the exception. In State v. Smith, 857 S.W.2d 1, 9 (Tenn.), cert. denied, 510 U.S. 96 (1993), we said that "[t]he ultimate test is spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication." The time interval is but one consideration in determining whether a statement was made under stress or excitement:

> Other relevant circumstances include the nature and seriousness of the event or condition; the appearance, behavior, outlook, and circumstances of the declarant, including such characteristics as age and physical or mental condition; and the contents of the statement itself, which may indicate the presence or absence of stress.

Tennessee Law of Evidence, supra, § 803(2).2 at 534; see also State v. Smith, 868 S.W.2d 561, 574 (Tenn. 1993), cert. denied, 513 U.S. 960 (1994).[3] The declarant does not have to be a participant in the startling event or condition, and statements made in response to questions may still be admissible if the declarant is under the excitement or stress of the event. See State v. Smith, 857 S.W.2d at 9.

---

[3] Nearly every jurisdiction has likewise held that the time interval is not dispositive and that other factors must be considered. See e.g., United States v. Rivera, 43 F.3d 1291, 1296 (9th Cir. 1995); Morgan v. Foretich, 846 F.2d 941, 947 (4th Cir. 1988); Gross v. Greer, 773 F.2d 116, 120 (7th Cir. 1985); United States v. Golden, 671 F.2d 369 (10th Cir.), cert. denied, 456 U.S. 919 (1982); United States v. Boyd, 620 F.2d 129 (6th Cir.), cert. denied, 449 U.S. 855 (1980).

Here, the trial court held a jury out hearing on the issue. The victim's mother testified that she gave the victim a bath shortly after arriving home from her parents' home. She left the victim to answer the phone and a moment later heard the victim "hollering real loud." She returned to the bathroom where she found the victim on the toilet in "a lot of pain." After placing the victim on the bed and leaning her back, she saw "tears and dried blood up in the vagina." She asked the victim, "Who made you hurt like that?" The victim lowered her head, but after being reassured, identified the defendant. This was approximately two minutes after the victim had started hollering.

The trial court concluded that the statements were admissible under Tenn. R. Evid. 803(2), after making the following findings:

> I think it's admissible . . . as an excited utterance. And I think the startling event, really, is the injury to the child on the commode when she was urinating at her mother's house. . . . When the little girl urinated, as her mother said, she was very upset, she hollered and she cried. According to her mother's testimony, she made the statement [ ] in the bedroom two minutes after that. [A]lthough her mother said she'd stopped crying, I think the two minute interval between her crying on the commode and her statement was a matter that still leads me to believe she was under the stress of excitement. . . . I acknowledge it's a close call here, but I believe it's admissible under 803(2).

The State contends, and the defendant concedes, that the pain experienced by the victim while urinating, as opposed to the sexual offense itself, constituted a startling event. The parties also agree that the victim's statement naming the defendant as the one who had hurt her was related to the startling event. The parties dispute whether the victim was under the stress or strain of this event when she identified the defendant. The defendant contends that the victim's statements were not made spontaneously, but rather, were made only after a period of reticence, reflection and considerable prompting by her parents.

-7-

We agree that the victim's painful urination was a sufficiently serious and startling event under the rule. It was related to the sexual offense, and it produced a separate cry of anguish from the victim, which, in turn, caused stress or strain to the victim. Contrary to the defendant's assertion, the record indicates that the victim's statements were made just a few minutes after the event, while she was in obvious discomfort. Although the victim's parents offered reassurance and asked what had happened, the stress of the event had not diminished and the time was short. In sum, we conclude that the trial court did not abuse its discretion in finding that the statements were made after a startling event, while the victim was under the stress of that event.

## MEDICAL TREATMENT AND DIAGNOSIS

Statements made for the purpose of medical diagnosis and treatment may be admissible as an exception to the hearsay rule under Tenn. R. Evid. 803(4):

> Statements made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.

To be admissible, the statement must have been made for purpose of medical diagnosis and treatment, describing medical history such as past or present symptoms, pain, or sensation; and if the statement addresses the inception or general character of the cause or external source of the problem, it must be "reasonably pertinent to diagnosis and treatment." State v. McLeod, 937 S.W.2d 867, 870 (Tenn. 1996).[4]

The exception is predicated on the perception that statements made for the purpose of medical diagnosis and treatment are reliable and trustworthy:

---

[4] The issue in this case involves primarily the first prong of the rule. We have held, and the defendant does not contest, that a child's statement identifying the perpetrator of a sexual offense may be "reasonably pertinent to diagnosis and treatment." State v. Livingston, 907 S.W.2d 392, 397 (Tenn. 1995).

> The rationale underlying the hearsay exception for statements made for purposes of medical diagnosis and treatment is that the declarant's motive of obtaining improved health increases the statements's reliability and trustworthiness. This motivation is considered stronger than the motivation to lie or shade the truth. Patients generally go to doctors to receive treatment, and treatment usually depends, in part, on what is said; thus the declarant has a self-interested motive to tell the truth.

State v. Barone, 852 S.W.2d 216, 220 (Tenn. 1993); see also State v. Livingston, 907 S.W.2d at 396 ("the declarant makes the statements for the ultimate purpose of receiving proper diagnosis and treatment").

As we recognized in McLeod, supra, however, the rationale for the exception and its application become more troublesome when the declarant is a child who, due to his or her age, may be unable to comprehend the medical setting or to understand the need to provide accurate information. Id. at 870. Our task in such cases is to "achieve a balance that fosters the important governmental interest in protecting children while maintaining fundamental fairness." Id. at 869. Thus, rather than hold the exception inapplicable in child sexual abuse cases, we said:

> Courts should not presume that statements by a child to a medical services provider are untrustworthy merely because there is disputable evidence of the child's motivation to be truthful. Rather, the admissibility decision should be based upon a thorough examination of all of the circumstances surrounding the statement.

Id. at 871. (Emphasis added).[5]

---

[5] This approach is consistent with other jurisdictions which allow the child declarant's motive to be inferred from circumstances. United States v. Iron Shell, 633 F.2d 77, 84 (8th Cir. 1980), cert. denied, 450 U.S. 1001 (1981); Dana v. Dept. of Correction, 958 F.2d 237, 239 (8th Cir.), cert. denied, 505 U.S. 1225 (1992); Morgan v. Foretich, 846 F.2d 941, 949 (4th Cir. 1988). In contrast, some jurisdictions have required that the child have knowledge of the motive. See, e.g., United States v. Barrett, 8 F.3d 1296 (8th Cir. 1993)("there must be evidence that the child understood the physician's role in order to trigger the motivation to provide truthful information"); State v. Wade, 622 A.2d 832, 835-36 (N.H. 1993)("The medical treatment exception applies whether the declarant is a child or an adult, and the foundation for admissibility must include a showing that the child possessed the requisite state of mind.").

Accordingly, in cases where the declarant is a child, numerous considerations are relevant to determining the motivation for the statements, including the timing and content of the statement, the presence or absence of any improper influences placed on the child, whether the child's statement was made in response to leading or suggestive questioning, and any other factor that may affect the trustworthiness of the statement. Upon an affirmative finding from evidence in the record that the conditions of the rule are met, the statement is admissible. Id. at 871.

In McLeod, the victim, age nine, was examined by a physician just a few days after she had been abused. The physician testified that she took a medical history for the purpose of her medical diagnosis and treatment, and the medical history included the victim's statement that she had been sexually penetrated by the defendant. No one else was present during the examination, which revealed that the victim had sustained injuries to her genitalia that were consistent with vaginal penetration. We concluded from these circumstances that the victim's statements had been made for the purpose of medical diagnosis and treatment. Id. at 872.

By contrast, in State v. Young, the companion case to McLeod, the eight-year-old victim was examined by a physician over one month after allegations surfaced that the defendant had fondled the victim. Although the doctor testified that she evaluated the victim "for possible sexual abuse," she conceded that she did not expect to find physical evidence of fondling. The victim's mother was present during the examination, which had been arranged by the Department of Human Services. We held that "these circumstances seem strongly to indicate that the statements were not made for the purpose of medical diagnosis and treatment as explicitly required by Rule 803(4)." Id. at 873.

Here, in a jury out proceeding, the nurse practitioner, Sue Ross, testified that the clinic's standard procedure is for a psychologist, social worker, or the nurse practitioner to interview the child and obtain a history which is used in the examination. The victim in this case was interviewed by a child psychologist. Although Ross was not present during the interview and did not take a separate medical history of her own, she relied upon the history taken by the psychologist. The trial court found:

> [T]he proof is that this young lady was taken to Memorial Hospital almost immediately. She was then transported to . . . the emergency room at General Hospital, where she spent several hours, but couldn't be examined, and then came back to Our Kids Clinic the very next day. I think under the circumstances that I can certainly draw an inference that this situation and her appearance at Our Kids Clinic was for the purpose of medical diagnosis and treatment, and that the [victim] wouldn't think otherwise.

The defendant argues that there was no evidence to show that the victim knew she was being interviewed for the purpose of medical diagnosis and treatment or that she was aware of the need to provide truthful and accurate information. The State maintains that the circumstances, specifically, that the victim was injured, taken to the clinic less than a day after the incident, and still in discomfort[6] at the time of the interview, supported the trial court's finding the victim's statement was made for medical diagnosis and treatment.[7]

We conclude that the evidence was sufficient to warrant an inference that the conditions of Tenn. R. Evid. 803(4) were met. First, the victim cried out at her grandparents' home with pain on urination shortly after being alone with the defendant. The victim's mother was called; the victim was taken home and bathed and again cried out from pain while trying to urinate. Her mother

---

[6] The State refers to evidence that the victim had refrained from urinating due to the physical pain.

[7] The State also argues in support of a "pragmatic" approach that would remove the declarant's motive from the analysis and focus solely on whether the statements were relied upon by the medical personnel. We rejected this in McLeod, 937 S.W.2d at 871.

examined her and observed evidence of injury inside the vagina. The victim identified the defendant as the cause of the injury. The child was then immediately taken about 9:00 p.m. to a hospital for treatment, then referred to another hospital where she stayed until 3:00 a.m. She refused to be treated because of the pain. She was referred for treatment to Our Kids Clinic, where she went the next morning at 8:00 a.m. for examination. The victim gave a history and was examined within twelve hours of the initial incident.

The nurse practitioner testified the purpose of the history was for proper diagnosis and treatment, and that she relied on the history for that purpose. The questioning by the psychologist was not suggestive or leading. The content of the victim's statement suggests no motive by the victim other than that of seeking medical treatment. The physical examination revealed injury to the vagina within the previous twenty-four hours. There was no evidence of improper influence on the child, nor evidence of a motive inconsistent with seeking medical treatment, nor evidence of any other factor affecting the victim's trustworthiness. No investigative agency had been involved to that point, and no investigative referral had been made. The motive was to seek medical treatment. Half the night was consumed in this continuing quest, which was resumed early the following day.

As in McLeod, supra, the totality of these circumstances support an inference that the victim's motive in making the statements was for the purpose of medical diagnosis and treatment. The trial court did not err in admitting the statements into evidence.

## CONCLUSION

We have determined that the trial court did not abuse its discretion in ruling that the victim's statements to her mother were "excited utterances" and

admissible under Tenn. R. Evid. 803(2). We have further concluded, however, that there was a sufficient foundation to show that the victim's statements to the child psychologist were made for the purpose of medical diagnosis and treatment under Tenn. R. Evid. 803(4). Costs of appeal shall be paid by the defendant.

_____
E. RILEY ANDERSON, CHIEF JUSTICE

**Concur:**

Drowota, Reid, Birch, and Holder, JJ.