IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 5, 2000

## STATE OF TENNESSEE v. RECO R. DOUGLAS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 95-11855      W. Fred Axley, Judge**

---

**No. W2000-00085-CCA-R3-CD - Filed January 30, 2001**

---

The defendant's conviction for first degree murder during perpetration of robbery was reversed by this court in 1998. The defendant was subsequently retried, again convicted of first degree murder during the perpetration of a robbery, and sentenced to life imprisonment. This appeal followed, whereby the defendant alleges the evidence is insufficient to sustain his conviction, and the trial court erroneously admitted the audio recording and transcript of the victim's phone call to 911. After a thorough review of the record, we affirm the defendant's conviction and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

A.C. Wharton, Jr., Public Defender; Trent Hall (at trial), Kathy Kent (at trial), and Tony N. Brayton (on appeal), Assistant Public Defenders, for the appellant, Reco R. Douglas.

Michael E. Moore, Solicitor General; Lucian D. Geise, Assistant Attorney General; William L. Gibbons, District Attorney General; and Edgar A. Peterson, IV, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In this appeal as a matter of right, the defendant claims that there is insufficient evidence to sustain his conviction for murder in perpetration of robbery, and the trial court erroneously admitted the audio recording and transcript of the victim's 911 call. After a thorough review of the record, we affirm the defendant's conviction and sentence.

# FACTS

On December 3, 1994, the victim, Jackie Rouse, was shot and killed during a robbery at his apartment. Two young males entered the victim's open door; one shot the victim in the abdomen with a 410 sawed-off shotgun; and the other then struck the victim's head with the gun barrel. After the assailants left, the victim managed to phone his neighbor and 911. While awaiting emergency personnel, the victim gave his neighbor a general description of the two youths. The victim further described the assailants to the 911 operator as two males about sixteen or seventeen years of age. The victim was transported to the Regional Medical Center, where he soon expired.

On December 8, 1994, five days after the homicide, an anonymous informant phoned Crime Stoppers and told the police that the victim's killer was the defendant, and the defendant was presently talking on a public phone at a gas station at Crump and Lamar, wearing a black Raiders jacket, and accompanied by a female wearing a red dress or coat. Pursuant to the anonymous tip, police immediately proceeded to the location. They found the defendant talking on a phone, wearing a Raiders jacket, and accompanied by a woman in a red coat or dress. The officers conducted a patdown of the defendant, whereby they discovered a beeper. Knowing that a beeper had been taken from the victim, Officer David Roleson testified that he radioed his lieutenant and asked him to page the victim's beeper. Less than a minute later, the beeper alerted and revealed the lieutenant's page.

The defendant was arrested and given his <u>Miranda</u> warnings. In his statement, the sixteen-year-old defendant admitted shooting the victim during a robbery. He stated that he used his accomplice's 410 sawed-off shotgun to shoot the victim, and his accomplice later hit the victim in the head with the barrel of the gun. He stated that they then took the victim's beeper and about $9.00 in quarters that were in a coffee cup.

The defendant's former girlfriend testified that she visited the defendant in jail shortly after his arrest. During her visit, the defendant admitted to shooting the victim during the robbery. He further stated to her that he stole a beeper and $9.00 in quarters from the victim.

The defendant also testified at trial. He denied any involvement in the homicide and testified his confession was a complete fabrication which resulted from abusive tactics by the officers. He further testified that he purchased the beeper from a pawn shop, but he could not remember its specific location. He also denied confessing to his former girlfriend.

The jury found the defendant guilty of first degree murder in perpetration of robbery. The defendant received a sentence of life imprisonment. This appeal followed.

**SUFFICIENCY OF THE EVIDENCE**

**A. Standard of Review**

The defendant contends that the evidence is insufficient to sustain the jury's verdict of first degree murder during perpetration of a robbery. We disagree.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S .Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). We do not reweigh or reevaluate the evidence and are required to afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). It is the defendant's burden to show this court why the evidence is insufficient to support the verdict returned by the trier of fact in his case. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

**B. Analysis**

Viewing the evidence in a light most favorable to the state, the record reveals that the defendant matched the victim's general description of one of the assailants; the defendant possessed the victim's beeper; he confessed to authorities that he shot the victim during a robbery; and the defendant's former girlfriend testified that the defendant told her he shot the victim and took the victim's beeper and money.

After a thorough review of the record, we hold that the evidence was sufficient to support the defendant's conviction for first degree murder during perpetration of a robbery. Although the defendant testified and denied any involvement in the incident, the jury was free to disbelieve his testimony. This issue is without merit

**911 TAPE AND TRANSCRIPT**

The defendant argues in his brief that the 911 tape and the transcript of the tape were improperly introduced into evidence. The 911 tape reflects that the victim identified his attackers as "two black boys about sixteen or seventeen." The defendant claims that the tape was not properly authenticated; it was inadmissable hearsay; and the prejudicial effect substantially outweighed its probative value.

We initially observe that there was no contemporaneous objection lodged as to lack of proper authentication. Accordingly, appellate review is waived as to this argument. *See* Tenn. R. App. P. 36(a). Regardless, the tape and transcript were properly admitted.

The evidence established that the 911 call came from the victim's address.  The victim's neighbor testified that the victim was speaking to the 911 operator when she arrived.  The tape and transcript were introduced through proper personnel at the dispatcher's office.   The tape and transcript were properly authenticated.

We further conclude the tape was admissible under the excited utterance exception to the hearsay rule.  *See* Tenn. R. Evid. 803(2).  Three requirements must be met before a statement will qualify as an excited utterance: first, there must be a startling event or condition; second, the statement must relate to the startling event or condition; and third, the declarant must still be under the stress of excitement from the event or condition when the statement is made.  State v. Gordon, 952 S.W.2d 817, 820 (Tenn. 1997); State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993).  These three requirements were satisfied with regard to this 911 call.

We finally reject defendant's argument that the prejudicial effect of this evidence substantially outweighed its probative value.  *See* Tenn. R. Evid. 403.  As the trial court noted, the tape was relevant to the issue of identity which was the most crucial and contested issue at the trial.  The trial court did not err in admitting this evidence.

## CONCLUSION

Based upon the foregoing, we hold there was sufficient evidence to sustain defendant's conviction of first degree murder during perpetration of a robbery, and the trial court properly admitted the tape and transcript of the victim's 911 phone call.  Thus, the judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE