IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2004

## STATE OF TENNESSEE v. MICHAEL LEBRON ANDERSON

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 242279     Douglas A. Meyer, Judge**

**No. E2004-00694-CCA-R3-CD Filed January 27, 2005**

The defendant, Michael Lebron Anderson, was convicted of burglary of a building other than a habitation, a Class D felony, and was sentenced to twelve years in the Department of Correction. On appeal, the defendant contends that the trial court erred by allowing hearsay statements of eyewitnesses to be introduced through the testimony of a police officer as an excited utterance, thereby violating his right to confront witnesses against him. After careful review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. C. McLin, J., delivered the opinion of the court, in which Jerry L. Smith and Alan E. Glenn, JJ., joined.

Ardena J. Garth, District Public Defender; Donna Robinson Miller and Lorrie Miller; Assistant District Public Defenders, for the appellant, Michael Lebron Anderson.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William Cox, District Attorney General; and Bob Patterson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The following evidence was presented at the defendant's trial. Officer Brian Smith, of the Chattanooga Police Department, testified that on August 5, 2002, he was patrolling the 1600 block of Adams Street in Chattanooga when he heard the sound of an activated burglary alarm. While attempting to locate the alarm, he noticed a group of juveniles standing on the sidewalk of 600 East

Main.[1]  As he approached the group, he observed that they were flagging him down, so he stopped and asked them what was going on.  Speaking at once, the juveniles told Smith that a "large black man with a bald head just kicked in the door of a business across the street" and was "still inside."  Smith testified that, after hearing the juveniles' statements, he radioed his location to dispatch, reported a possible burglary in progress, and proceeded to investigate.  Smith drove across the street to the business, discovered the door open, and found the defendant inside behind the display counter of the business.  After waiting for backup officers to arrive, he arrested the defendant.  Smith described the inside of the building as ransacked – drawers were pulled open and papers scattered everywhere.  According to Smith, nobody else other than the defendant was found inside the building.

Officer Justin McCommon testified that he was assigned to watch the defendant while the other officers searched the building for additional suspects.  While in his custody, the defendant appeared anxious and complained of chest pains.  As a result, McCommon took defendant to the hospital.  At the hospital, the defendant apologized to McCommon, saying he was sorry for "making [the officer] come out and work and do all the stuff that we were having to go through."  In addition, the defendant mentioned that "he was getting too old to be doing this kind of stuff."  Finally, McCommon stated that, after the defendant was taken to jail, five dollars in quarters and a dollar-fifty in dimes were found on the defendant's person.

Charles Stansell testified that he was an employee of the business, Atlas Bolt Company, located at 615 East Main Street.  On August 5, 2002, he received notification of a burglary in progress at his place of employment and went down to the business to assess the situation.  Upon arrival, Stansell observed the defendant sitting in the back of a police car.  Stansell identified the defendant at trial as the same person he saw sitting in the police car.  After waiting outside for a period of time, Stansell was allowed into the building in order to inspect the premises and assess the damage.  Stansell noticed significant damage to the building's front door.  He also noticed that the inside office space was vandalized – broken locks on the file cabinets, desk drawers turned upside down, and papers scattered everywhere.  According to Stansell, the only item missing from the business was the change from the cash register.  Stansell testified that the cash and checks were always removed from the register prior to closing the store and placed in a secure safe, leaving only the quarters, dimes, nickels, and pennies remaining.  However, the register was empty except for pennies.

Following deliberations, the jury found the defendant guilty of burglary of a building other than a habitation.  The trial court sentenced the defendant to a maximum sentence of twelve years in the Department of Correction.  He now appeals.

## ANALYSIS

---

[1]  Officer Smith estimated the ages of the group of juveniles to be 12 to 19.  Smith  testified that the juveniles were part of a crowd coming from a neighborhood revival meeting.

The defendant argues that the trial court erred in allowing Officer Smith to testify about the juveniles' statements, thereby violating his right to confront witnesses against him. We review questions regarding the admissibility of evidence only for abuse of discretion resulting in an unfair trial and will not reverse the trial court's ruling absent a showing of such abuse. See State v. Stout, 46 S.W.3d 689, 697 (Tenn. 2001); State v. Stinnett, 958 S.W.2d 329, 331 (Tenn. 1997).

Prior to the beginning of trial, the State advised the trial court of its intent to introduce the juveniles' statements via the testimony of Officer Smith. After informing the trial court of its inability to subpoena any of the juveniles as witnesses,[2] the State argued that the juveniles' statements were admissible as an excited utterance. In response, the defendant objected and moved to suppress the statements, arguing no timely notice was received and that the officer's testimony regarding the juveniles' statements constituted inadmissible hearsay. The trial court allowed the voir dire examination of Officer Smith outside the presence of the jury, and determined that the juveniles' statements were hearsay, but admissible as an excited utterance.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). In general, hearsay statements are inadmissible. Tenn. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or otherwise by law."). However, the rules of evidence provide an exception to the hearsay rule allowing hearsay statements to be admissible if they meet the conditions of an "excited utterance." Tenn. R. Evid. 803(2). An excited utterance is a "statement relating to a startling event or condition made while the declarant is under the stress of excitement caused by the event or condition." Id. The rationale for admitting an "excited utterance" is that the perceived event produces nervous excitement, which temporarily suspends the capacity to reflect, making the fabrication of statements about that event unlikely. State v. Gordon, 952 S.W.2d 817, 819 (Tenn. 1997) (citations omitted). In addition, a statement relating to a startling event is typically made while the memory of the circumstance or event is still fresh, thus creating a more accurate testimonial to the event than would be produced by a later in-court description of it. Id. at 819-20.

In order to meet the parameters of the "excited utterance" exception (1) there must be a startling event or condition that causes the stress of excitement; (2) the statement must relate to the startling event or condition; and (3) the statement must be made while the declarant was under the stress or excitement of the event or condition. State v. Stout, 46 S.W.3d 689, 699-700 (Tenn. 2001); Gordon, 952 S.W.2d at 820. It is reasonable to infer that the observance of a break-in is an exciting or startling event. As noted by our supreme court, the "event must be sufficiently startling to suspend the normal, reflective thought processes of the declarant." Gordon, 952 S.W.2d at 819 (citations omitted). It is clear from Officer Smith's testimony that the juveniles had just witnessed the break-in and were excited to report what they had witnessed. Smith testified that, after flagging him down, all of the juveniles began speaking at once and their statements appeared "excited" and

---

[2] One of the juveniles who flagged down the officer was identified as Desunta Pitts. A subpoena was issued for her appearance as a witness, but when serving the subpoena, the Sheriff's Office found that Desunta Pitts no longer lived at the address listed on the subpoena. As a result, the State was unable to locate her for trial.

"spontaneous." It is also clear that the juveniles' statements related to the startling event of the break-in. According to the Tennessee Law of Evidence, a statement "may describe all or part of the event or condition, or deal with the effect or impact of that event or condition." Neil P. Cohen et al., Tennessee Law of Evidence § 8.07[3] (4th ed. 2000). Here, the juveniles' statements described the startling event they had personally observed. Finally, it is clear that the juveniles' statements were made in reaction to the exciting event they had just observed. Our supreme court has said that the "ultimate test is spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement and strain of the circumstances . . . ." State v. Smith, 857 S.W.2d 1, 9 (Tenn. 1993) (citations omitted). Officer Smith testified that he responded to the juveniles' motions to come over about two minutes after hearing the burglar alarm go off. Thus, at the time the juveniles made the statements implicating the defendant, they had just witnessed the break-in and were responding to what they had witnessed without thoughtful reflection. Though not entirely dispositive, the brief passage of time between the event and the juveniles' statements weigh in favor of a finding by the trial court that the statements were made under the stress or excitement of witnessing a break-in.

As previously noted, the determination of whether a statement is hearsay and whether it is admissible through an exception to the hearsay rule is left to the sound discretion of the trial court. State v. Stinnett, 958 S.W.2d 329, 331 (Tenn. 1997). After hearing the testimony regarding the substance of the juveniles' statements, the trial court found that the statements clearly fell within the "excited utterance" exception to the hearsay rule. Upon review, we agree and conclude that the trial court did not abuse its discretion by admitting the statements.

As a related matter, we address whether the admission of the juveniles' statements violated the defendant's right to confront and cross-examine any witnesses against him. The Sixth Amendment of the United States Constitution provides the accused with the right to be confronted with witnesses against him. This constitutional guarantee is applied to the states via the Fourteenth Amendment. See Pointer v. Texas, 380 U.S. 400, 403 (1965). In addition, Article I, Section 9 of the Tennessee Constitution guarantees the accused the right "to meet the witnesses face to face." Although the two provisions are not identical, the Tennessee Supreme Court has previously applied the standards of the United States Supreme Court under the Sixth Amendment in determining whether there has been a violation of the accused's constitutional right to confront witnesses against him under Article I, Section 9. See State v. Middlebrooks, 840 S.W.2d 317, 332 (Tenn. 1992); State v. Causby, 706 S.W.2d 628, 631 (Tenn. 1986); State v. Armes, 607 S.W.2d 234, 237 (Tenn. 1980).

The recent decision of the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed.2d 177 (2004), overturned the previously well-settled rule of Ohio v. Roberts, 448 U.S. 56 (1980), and changed the law with respect to the Sixth Amendment's Confrontation Clause and the interplay it has with the various evidentiary rules concerning hearsay and hearsay exceptions. In Crawford, the United States Supreme Court held that the Confrontation Clause prohibits the admission of testimonial hearsay against a criminal defendant without a showing that the witness who made the statement is unavailable, and that the defendant had a prior opportunity to cross-examine the witness. Crawford, 124 S. Ct. at 1374. Prior to Crawford, the

admission of an unavailable witness statement against a criminal defendant at trial did not violate the Confrontation Clause provided the statement fell within a firmly rooted hearsay exception or bore a particularized guarantee of trustworthiness. Roberts, 448 U.S. at 66, overruled by Crawford, 124 S. Ct. at 1371. The Crawford Court rejected this approach, finding the standard too subjective and amorphous. Instead, it stated that "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." Crawford, 124 S. Ct. at 1364.

According to Crawford, proper Sixth Amendment Confrontation Clause analysis turns on whether a particular statement is testimonial or non-testimonial in nature. Id. at 1374. In Crawford, the Supreme Court held that the Confrontation Clause bars the use of testimonial hearsay unless the witness is unavailable to testify at trial and was subject to cross-examination at the time the statement was made. Id. However, the Court was careful to note that "not all hearsay implicates the Sixth Amendment's core concerns." Id. at 1364. Where non-testimonial hearsay is involved, the Confrontation Clause is not implicated and the states are free to determine whether the statement is admissible under its own hearsay law. Id. at 1374. Therefore, we must determine whether the juveniles' excited utterances are testimonial or non-testimonial.

Although the Supreme Court expressly refused to clearly and comprehensively define what constitutes testimonial or non-testimonial hearsay, the Court did explain that the term testimonial applied generally to the following categories:

> *ex parte* in-court testimony or its functional equivalent . . . such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions . . . statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

Id. at 1364 (citations omitted). In particular, the Supreme Court stated that, at minimum, the term applied to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 1374.

In the instant case, we note that the statements made by the juveniles to Officer Smith do not fit into any of Crawford's core testimonial categories. They were not statements made at a preliminary hearing, grand jury, or former trial. Nor can the spontaneous, excited remarks of the juveniles be seen as police interrogation. In fact, the essential characteristics that cause the juveniles' statements to fall within the ambit of the excited utterance exception conflict with the characteristics that would make them testimonial. The underlying rationale for the excited utterance exception is that the perceived event produces nervous excitement, making fabrication of statements about that

event unlikely. Because an excited utterance is a reactionary event of the senses made without reflection or deliberation, it cannot be testimonial in that such a statement has not been made in contemplation of its use in a future trial. Guided by this analysis, we conclude that the juveniles' statements were non-testimonial. Therefore, the admission of these statements presents no violation of the defendant's rights under the Confrontation Clause of the Sixth Amendment. Accordingly, we affirm the judgment of the trial court.

_____
J. C. McLIN, JUDGE