# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 9, 2013

## STATE OF TENNESSEE v. KENNY KIMBLE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-04024    Paula Skahan, Judge**

---

**No. W2012-00407-CCA-R3-CD  - Filed July 22, 2013**

---

Following a jury trial, Defendant, Kenny Kimble, was found guilty of rape of a child. The trial court imposed a sentence of twenty-five years. In his only issue raised on appeal, Defendant asserts that the trial court erroneously admitted hearsay testimony. The State argues that this issue is waived because the motion for new trial was untimely filed, having been filed more than thirty days after entry of the judgment of conviction. We reject the State's argument concerning the timeliness of the motion for new trial. The judgment of conviction was not stamp-filed by the clerk, and thus there is nothing in the record to show that the motion for new trial was filed late. However, after review of the issue on its merits, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., J., joined. JERRY L. SMITH, J., filed a separate concurring opinion.

Dewun R. Settle, Memphis, Tennessee, (on appeal); Stephen C. Bush, District Public Defender; Alicia Kutch and Jennifer Johnson, Assistant Public Defenders, Memphis, Tennessee, (at trial), for the appellant, Kenny Kimble.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Amy P. Weirich, District Attorney General; Carrie Sheldon and Jennifer Nichols, Assistant District Attorneys General, for the appellee, the State of Tennessee.

# OPINION

## Timeliness of Motion for New Trial

We first address the State's contention that Defendant's motion for new trial was not timely filed. The jury returned its verdict on December 15, 2011. The only possible sentence in this case is twenty-five years. At the time of the offense in this case in February 2010, the following statutory sentencing provisions applied to persons convicted of rape of a child:

(a)  Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age.

(b)(1)  Rape of a child is a Class A felony.

(2)(A)  Notwithstanding title 40, chapter 35, a person convicted of a first or subsequent violation of this section shall be punished by a minimum period of imprisonment of twenty-five (25) years. The sentence imposed upon any such person may, if appropriate, exceed twenty-five (25) years, but in no case shall it be less than the minimum period of twenty-five (25) years .

Tenn. Code Ann. § 39-13-522(a)-(b) (2010 Repl.).

It appears from the record that Defendant was classified as a standard offender. Generally, those defendants classified as a standard offender convicted of a Class A felony are subject to a sentence between fifteen and twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1). A sentence of more than twenty-five years was therefore not statutorily "appropriate" for Defendant. Hence, the only possible sentence for Defendant in this case is twenty-five years.

A uniform judgment form was completed pursuant to Rule of the Tennessee Supreme Court 17. One of the blank spaces on the uniform judgment document is located to the right of the space designated for the trial judge's signature and is labeled "Date of Entry of Judgment." Someone, presumably the trial judge, hand wrote "12-16-11" in this space. The only written indication on the face of the judgment that mentions the trial court clerk is a certificate of service which provides that prior to entry of the judgment, a copy of it was made available to the party or parties who did not provide a signature on the judgment.

There is nothing on the judgment to indicate when the judgment was filed by the trial court clerk. Presumably it was at least placed inside what is generally referred to as the court jacket or court file, because a copy is obviously in the appellate records certified by the trial court clerk. A motion for new trial was filed by Defendant on January 19, 2012, as clearly indicated by the "filed" stamp of the clerk on the face of the motion. An order overruling the motion for new trial has a signed notation upon it that it was filed by the clerk on January 20, 2012. Defendant's Notice of Appeal also has written upon its face the notation, signed by the clerk, that the document was filed on February 15, 2012.

In its brief, the State asserts that the judgment of conviction was "entered" on December 16, 2011. Thirty days following was January 15, 2012, which was a Sunday. The following day was a holiday, so under the applicable rule, Defendant had an extension through Tuesday, January 17, 2012, in order to timely file his motion for new trial, if in fact the judgment was entered December 16, 2011. Tenn. R. Crim. P. 45(a)(2)(A). As noted above, the motion for new trial was not filed until January 19, 2012.

This court deemed it necessary to attempt to have the record supplemented with any existing document signed by the clerk which would state the date the judgment was entered, or a court minute entry with the same information. Pursuant to Tennessee Rule of Appellate Procedure 24(e), Tennessee Code Annotated section 27-3-128, and *State v. Byington*, 284 S.W.3d 220, 224 (Tenn. 2009), this court ordered the trial court clerk to supplement the appellate record as follows:

> (1) If there is an original uniform judgment document in this case, *State v. Kenny Kimble*, Shelby County Criminal Court, Docket No. 10-04024, which has a file-date stamped by the clerk, then a copy of that judgment must be included in the supplemental record.

> (2) If no such described uniform judgment document exists, then the trial court clerk shall include in the supplemental record all minute entries in this case from December 14, 2011 (the date the jury returned its verdict) through January 20, 2012 (the date the order denying the motion for new trial was entered).

Based upon the trial court clerk's supplemental record filed in response to the order, there is no judgment of conviction or minute entry which precisely states the date the judgment was filed by the trial court clerk. In *State v. Stephens*, 264 S.W.3d 719 (Tenn. Crim. App. 2007), this court addressed the issue of filing of a judgment of conviction in a case with facts similar to Defendant's case. In *Stephens*, the State argued that the defendant

waived all issues other than the sufficiency of the evidence because the defendant did not timely file his motion for new trial. *Id*. at 727. The Defendant in *Stephens* was appealing his conviction of first degree murder. He raised three issues wherein the remedy would be a new trial, in addition to challenging the sufficiency of the evidence. *Id*. at 722. In *Stephens*, the jury returned its verdict of guilty on September 3, 2004, and immediately following the verdict, the trial court imposed a sentence of life imprisonment, the only possible sentence in the defendant's case. *Id*. at 727. As this court noted, "Presumably sometime thereafter, the district attorney prepared a uniform judgment document as required by Tennessee Code Annotated section 40-35-209(e)(1)." *Id*. Tennessee Code Annotated section 40-35-209(e)(1) provides as follows:

> (e)(1) After the defendant is sentenced, the district attorney general **shall complete and file** within thirty (30) days the uniform judgment document for the conviction that is signed by all parties; but if not signed by the parties, the clerk shall make a copy of the document available to the parties before entry by the court, . . . .

(Emphasis added).

In *Stephens*, like in the case *sub judice*, the uniform judgment document had a date filled in on the blank space designated for "Date of Entry of Judgment." The date designated in *Stephens* was September 3, 2004, the same date of the jury verdict and the trial court's pronouncement of the sentence in open court. *Id*. However, unlike the case *sub judice*, the judgment form in *Stephens* had two stamps on it. There was the "file-stamp" showing the judgment was filed with the circuit court clerk on September **10**, 2004, and also a minute-entry stamp reflecting date of minute-entry of the judgment on September 10, 2004. *Id.*

The motion for new trial in *Stephens* was filed on October 7, 2004, more than 30 days after September 3, 2004, the date the State asserted was the date of entry of the judgment. *Id*. The State argued that pursuant to Rules of Criminal Procedure 33(b) and 45(b)(3), that certain issues were waived because the motion was filed more than 30 days after entry of the judgment and the time period could not be extended. *Stephens*, 264 S.W.3d at 727. The defendant in *Stephens* argued that the uniform judgment was entered on September 10, 2004 (one week *after* the sentence was pronounced in open court and one week after the date filled in on the blank space designated "Date of Entry of Judgment") the date clearly indicated as the date the judgment was filed with the trial court clerk.

This court agreed with the defendant and held,

-4-

In order to promote fairness, consistency, and uniformity, we agree with the rationale of the courts in [*State v. Willie*] *Norman*[,] [No. W2003-02067-CCA-R3-CD, 2004 WL 2255253 (Tenn. Crim. App., Oct. 7, 2004)] and *Graham* [*v. State*, 90 S.W.3d 687 (Tenn. 2002)] and conclude that the order of sentence was entered on the date the uniform judgment document was filed with the court clerk - September 10, 2004.

*Id*. at 730.

In *State v. Willie Norman*, the judgment was signed by the trial judge on July 15, 2003, the same date that the defendant entered his guilty plea. The judgment was not filed with the trial court clerk until two weeks later, on July 29, 2003. *Willie Norman*, 2004 WL 2255253 at *5. The notice of appeal (the defendant had reserved a certified question of law for appeal) was filed on August 23, 2003. The court in *Willie Norman* concluded that the judgment was entered on the date it was filed with the trial court clerk. In *Graham*, our supreme court addressed the timeliness of an application to appeal the denial of a motion to reopen a post-conviction petition. *Graham v. State*. 90 S.W.3d at 689. The order of the trial court denying the motion was signed by the trial judge on December 6, 2000, but it was not filed in the trial court clerk's office until December 13, 2000. In determining which date was the date of "entry" of the order, our supreme court held that the day the judgment was *filed* by the clerk, and *not* the day the judgment was signed by the trial judge, was the day the judgment was entered and thus when the time commenced to run for filing an application to appeal.

Particularly pertinent to the issue in the case *sub judice*, this court in *Stephens* stated,

It is our view that the "file-stamp" date provides evidence of when the order of sentence was entered by the clerk. Thus, the effective date for entry of a judgment or order of sentence is the date of its filing with the court clerk after being signed by the judge.

*Stephens*, 264 S.W.3d at 729.

In Defendant's case, there is nothing in the record to conclusively state what day the judgment was filed with the trial court clerk. Based upon the authorities cited above, only a "file-stamp" or other similarly designated marking by the trial court clerk can suffice to show what date the judgment was filed. A handwritten notation on the judgment form above the pre-printed "Date of Entry of Judgment" without being signed by the trial court clerk is not an indication of when the judgment was filed.

Our General Assembly assigned the responsibility to complete *and file* the judgment document to the district attorney general. Tenn. Code Ann. § 50-35-209(e)(1). Implicitly, this includes the responsibility to ensure that the document is "stamp-filed" by the trial court clerk in compliance with rules and case law. Absent a "stamp-filed" judgment, we are unable to conclude that Defendant's motion for new trial was not timely filed. Accordingly, we will address Defendant's sole issue on the merits.

**Hearsay Objection**

*Factual Background*

Our resolution of this issue does not require an extensive statement of all the testimony presented at trial. The victim was six (6) years old at the time of the incident. The victim testified that Defendant was the victim's "[half-]brother's cousin." The victim's mother was away on a trip the weekend that the victim was sexually assaulted in his home. A family friend, Sammy, who was referred to as an "uncle," the victim's aunt, and the victim's 17-year-old half-brother resided at the residence along with the victim and his mother.

The victim testified that he was asleep in his bedroom, on his bed which was a mattress on the floor, when Defendant, who was 17 years old at the time, woke him up and promised some candy if the victim would drop his underwear and let Defendant see the victim's "behind." The victim pushed down his underwear. Defendant penetrated the victim's anus with Defendant's penis, which was referred to by the victim as Defendant's "rocks." Defendant had come to the home on a Thursday night, and stayed on his visit until the following Tuesday. The victim's mother was gone Friday until Sunday.

The victim testified that it hurt him when Defendant had penetrated and was "humping" the victim. The victim stated that he told Defendant to quit and finally said he had to go to the bathroom. The victim testified that he went to the bathroom to "poop." Defendant took one of the victim's t-shirts from the dirty clothes pile and wiped off his penis, then placed the soiled shirt under the victim's bed. The victim told his half-brother what had happened, but his half-brother apparently did not believe him.

The victim's mother testified that when she returned home on Sunday, there was no indication to her that something unusual had happened over the weekend. She returned Defendant to his grandmother on the following Tuesday when the visit was over, and she returned home.

Afterward, the victim's mother found the victim's soiled shirt under his bed. After examining it, she became upset and in a loud voice yelled "who the hell . . . put his shit on this shirt and put it under this bed?" The victim "instantly" came down the hallway and told his mother, "mama, [Defendant] used that shirt." This statement by the victim, plus the following testimony of his mother are the statements by the declarant (the victim) which are the subject of the issue on appeal. The victim's mother testified,

A. I said used the shirt to do what? He said he used the shirt to wipe his rocks off after he got through putting his wee wee in my butt.

Q. What in the world did you do or say?

A. I asked him, I said what you mean he put his wee wee in your butt? He said he put his - - he told me if he give me a piece of - - if I give you a piece of candy - - no, he said if I give you a piece of candy, will you turn the lights off or something like that, something about the lights. And then he said something about Kenny told me if you let me put my wee wee in your butt then I'll give you a piece of candy. So I said what you tell him? He said I told him okay.

The victim's mother testified that the tone of her voice when she discovered the victim's soiled t-shirt was the same tone she used whenever she was upset about something. The victim's mother further testified that when the victim responded instantly after her question, the victim responded in a typical "mother and son talk" because she usually talked to the victim about everything. The trial court ruled the statements by the victim to his mother were excited utterances not excluded by the hearsay rule. In doing so, the trial court concluded that the startling event was the victim's "seeing that t-shirt in his mother's hand."

While testifying during direct examination, the victim testified (prior to his mother's testimony) about his mother finding the soiled t-shirt. He basically relayed the same information about their conversation as his mother later did when she testified. Specifically, he testified that he told his mother that Defendant promised him some candy if Defendant could pull down his pants, and he testified that Defendant did pull down his pants "and put his [Defendant's] front side in my behind."

*Analysis*

Tennessee Rule of Evidence 801(c) provides that "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove

the truth of the matter asserted." Our supreme court, specifically addressing a hearsay objection issue, has stated,

> Initially, questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this Court will not interfere in the absence of abuse appearing on the face of the record. *State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008); *see State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 474 (Tenn. 1993); *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)).

*Pylant v. State*, 263 S.W.3d 854, 870 (Tenn. 2008).

In the more recent case of *State v. Franklin*, 308 S.W.3d 799 (Tenn. 2010), our supreme court addressed "the lone question of whether the [declarant's] written identification of [a] white van's tag number is inadmissible testimonial hearsay." *Id*. at 809. Stating the standard of review for the sole issue on appeal, our supreme court held,

> Generally, the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record. *Lewis*, 235 S.W.3d at 141. A trial court abuses its discretion only when it applies an incorrect legal standard or makes a ruling that is "illogical or unreasonable and causes an injustice to the party complaining." *Id*. (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

> Whether the admission of hearsay statements violated a defendant's confrontation rights is, however, a pure question of law. *Lilly v. Virginia*, 527 U.S. 116, 125, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *Lewis*, 225 S.W.3d at 141-42. The proper application of that law to the trial court's factual findings is likewise a question of law, subject to de novo review. *Lewis*, 235 S.W.3d at 142.

*Id*.

We specifically note that the supreme court recognized the de novo review standard regarding whether admission of a hearsay statement violates a defendant's confrontation

rights. However, the court did not similarly conclude that the initial determination of whether a statement is hearsay is also subject to de novo review. The supreme court maintained the abuse of discretion standard for review of a trial court's decision on admissibility of hearsay testimony. *Cf. State v. Gilley*, 297 S.W.3d 739 760 (Tenn. Crim. App. 2008), filed prior to both *Pylant* and *Franklin*.

The trial court in this case correctly ruled that the objected to testimony (the victim's statements to his mother when she found the soiled t-shirt) was offered for the truth of the matter asserted: that Defendant anally penetrated the victim and wiped his penis with the victim's t-shirt. As noted above, the trial court concluded that the testimony was hearsay, but was admissible under Tennessee Rules of Evidence 803(2) as an excited utterance by the victim/declarant. In *Franklin*, our supreme court set forth the necessary prerequisites for admission of hearsay testimony under the excited utterance exception:

> We have interpreted the rule to set forth three requirements for a statement to meet the excited utterance exception. *Cf.* Neil P. Cohen *et al., Tennessee Law of Evidence* § 8.07[3], at 8-75 to 8-77 (5[th] ed. 2005). The first requirement is "a startling event or condition" that "'suspend[s] the normal, reflective thought processes of the declarant.'" *State v. Stout*, 46 S.W.3d 689, 699 (Tenn. 2001) (quoting *State v. Gordon*, 952 S.W.2d 817, 820 (Tenn. 1997)) (other internal quotations omitted). Second, the statement must "relate to" the startling event or condition. *Id*. This broad requirement offers "considerable leeway" such that "the statement may describe all or part of the event or condition, or deal with the effect or impact of that event or condition." *Gordon* 952 S.W.2d at 820 (quotation omitted); *Cohen et al*., § 8.07[3][c], at 8-76. The third and final requirement dictates that the declarant make the statement while "under the stress or excitement from the event or condition." *Stout*, 46 S.W.3d at 699-700. This requirement considers a variety of factors, including the interval of time between the startling event and the statement. *Id*. at 700.

*Franklin*, 308 S.W.3d at 823.

In this case the record supports the trial court's conclusion that the "startling event" was the mother's questioning about the soiled t-shirt in a loud manner while she was "upset." The record also clearly shows that the victim's statements were directly related to the startling event, and the statements were made as a direct result of whatever stress or excitement resulted from his mother's actions. The remaining requirement, that the startling event suspended the normal reflective thought processes of the victim, is a closer question.

Defendant correctly points out that some proof in the record weighs against finding that the victim's "normal, reflective thought processes" were suspended. For instance, despite the State's best efforts in attempting to elicit such proof by direct evidence testimony from the victim's mother, she made it abundantly clear that in her observation the victim was not upset until *after* he made the hearsay statements, and then he was upset because he thought that he might get a shot at the hospital.

However, circumstantial evidence supports the trial court's conclusion that the victim/declarant was sufficiently stressed or excited when he made the statements. The victim had not told his mother about the sexual assault from the time she returned home on Sunday evening until at least Tuesday or Wednesday when she found the shirt. This suggests the victim's normal, reflective, thought process was *not* to tell his mother about the sexual assault. The proof that the victim immediately came to his room and "instantly" told his mother about the incident when she was upset about finding the shirt and being confrontational, also is circumstantial evidence that his normal reflective thought process had been suspended.

The trial court did not err by admitting the hearsay testimony under the "excited utterance" exception to the hearsay rule. Even if it was error, it would be harmless error. As noted above, the victim had already testified to the substance of the challenged testimony. Defendant is not entitled to relief in this appeal.

## CONCLUSION

We have no manner to determine the exact date the judgment was filed since the judgment was not stamp-filed by the trial court clerk. Accordingly, the State is not entitled to the relief it seeks to have this appeal dismissed because we are unable to conclude that the motion for new trial was not timely filed. After a review of the issue presented on its merits, we conclude Defendant is not entitled to relief. The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE