IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 6, 2005

**STATE OF TENNESSEE v. COURTNEY MEANS**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 03-05193, 03-05200, 05      James C. Beasley, Jr., Judge**

**No. W2005-00682-CCA-R3-CD  - Filed March 21, 2006**

Defendant, Courtney Means, was convicted of three aggravated robberies and sentenced to twelve years in each case, with two of the sentences to be served consecutively.  On appeal, he argues that the evidence is insufficient to sustain the convictions; the trial court erred in allowing the hearsay statement of a deceased victim to be admitted as an excited utterance; and the court erred in sentencing.  Following our review, we affirm the judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Robert Jones, Shelby County Public Defender; Trent Hall, Assistant Public Defender; and Phyllis Aluko, Assistant Public Defender, for the appellant, Courtney Means.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; Paul Hagerman, Assistant District Attorney General; and Valerie Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Officer John Pike of the Memphis Police Department testified that in December 2002 and January 2003 he was assigned to "a robbery task force, assigned to handle a string of driveway robberies that had been occurring in [the] area."  He said that the robberies of the victims, Shirley Anderson, Michael Konrad, and Jean Sinclair, were similar to other robberies that had occurred in the same area:

> They fit similar mode of several other robberies that . . . had occurred in the
> area of usually older individuals coming home from usually their grocery store or

eating or something. When they arrive home, they get out of the car, were approached by generally two male blacks, armed with a chrome handgun, and robbed in the driveway or at the carport as they're exiting their vehicle.

Officer Pike said that in the robberies a "[b]urgundy Oldsmobile was used . . . it was a Cutlass with a – one of the characteristics [sic] had a luggage rack on the trunk of it." He said that on January 15, 2003, he responded to a call from the dispatcher: "We got a suspicious person call at a check cashing place on Winchester and Goodlett. Individual was at the cash checking [sic] place attempting to cash one of the checks taken in one of our robberies that occurred earlier that day." At the scene, Officer Pike observed a burgundy Oldsmobile and he held Defendant, the occupant, at gunpoint until other officers arrived. Pike said that under the carpet on the driver's side of the vehicle, he found "the chrome handgun which had been used and obviously described in several of the driveway robberies," and a check from the victim, Jean Sinclair, was "kind of crumpled up beneath the floor mat." There was a bullet in the chamber of the pistol. He said that Jean Sinclair had been robbed about two and one-half hours earlier that day.

Shirley Anderson testified that she was 82 years old and a retired registered nurse. She described being robbed on December 22, 2002:

I came home from church. It was about 12:20 p.m., and I drove into my garage, turned off the engine, and reached over to get my purse and my church bulletin, unlocked the door with my left hand, just turned and I saw this black man standing there pointing a gun at me. He was back of the side-view mirror, closer, I would say, to the left front tire.

She described how the robber took her purse and tried to take her car keys:

We just stared at each other for a little while. I could see him very plainly through the windshield. And then he jerked open the door and said, Give me that purse. I didn't do anything. I was so stunned to see him standing there that I was just like I was frozen. And so he reached in across me and grabbed my purse. I was just sitting there with my hands in my lap . . . holding my car keys.

And after he took my purse, he tried to get my keys. And he was pulling one way and I was pulling the other, and the key ring came apart and the keys scattered in the car. Two of them landed on the passenger seat and another one was on the floor of the car. So he ran then.

She said that she earlier had identified a photograph of Defendant as the person who robbed her.

Officer Jason Randolph said that he had been a Memphis police officer for eight years. On January 21, 2003, he took a photospread to Ms. Anderson's residence where she identified a photograph of the defendant, saying she "believe[d] he is the person that robbed me."

Michael Konrad said that on January 4, 2003, he was returning to his Memphis residence at about 11:00 p.m. He drove his vehicle into the garage, got out, and was headed to the door when "two young black males approach[ed] [him]. One had a gun." He said that the two men then robbed him: "One of the young men said get on your knees, M.F. So I got on my knees. They said all the way down. So I laid down on my garage floor. They came up and they stole my keys and my wallet, and they took off." He saw the men escape in a maroon car and called 9-1-1 to report the robbery. The police arrived within seven to ten minutes. Later, he was shown a series of photographs by police officers and identified Defendant as one of the robbers. He also identified Defendant in court.

Sergeant John Mills of the Shelby County Sheriff's Department testified that he had shown Konrad six or seven photographs, one of which was that of Defendant.

Officer James Goines said that he had been a Memphis police officer for five years and on January 15, 2003, at about 3:00 p.m. had responded to a robbery at 2332 Ridgeway. He described the victim, Jean Sinclair, a seventy-eight year old woman, as he first saw her:

> I arrived on the scene. I saw the victim inside of her house. She was crying, shaking, was not able to speak to me. There was another gentleman on the scene. We were trying to calm her down. I was trying to get the information what she could tell me what happened[.]

> She was very shaken up, very emotional. She had been crying. Her eyes were puffed up and she was physically shaking. . . . Said she was arriving home. She was pulling into her little parking area behind the condo. Approached by a male black. Approached her with a silver handgun. Hit her in the head with the silver handgun, took her purse and ran away.

Rhonda Vandiver testified that she was working at a Cash Depot store on January 15, 2003, when Arkeesha Martin, a previous customer, came into the store and attempted to cash a personal check. Vandiver said that normally she cashed only payroll and tax checks and this one was "odd" because it "didn't have a signature on there but it had writing on there." She said the check was drawn on the account of Jean Sinclair, but there was "no signature." The check was made out to Arkeesha Martin for $1500 and "said college tuition and good luck there where the signature was." After Vandiver informed Martin that she could not cash the check, Martin left the store. Vandiver then telephoned Ms. Sinclair about the check. Vandiver said that a few minutes later, Martin returned with the check and "now it was signed." Vandiver then telephoned 9-1-1 to report the matter. The police arrived "[v]ery quickly" and arrested several people, including Defendant.

Timothy Steele testified that he was a Memphis police officer and on January 15, 2003, had received a "suspicious party" call to the Cash Depot store. He said that he and another officer detained Defendant at the scene and searched his vehicle. They found "a silver handgun, a couple of checks, looked like from [a] personal account, and some marijuana."

Sergeant Timothy Cooper of the Memphis Police Department testified that on January 15, 2003, he was assigned to the crime response unit. He said that he found a gun and a blank check in the name of Jean C. Sinclair under the floormat on the driver's side of the vehicle he searched.

Defendant testified as his only witness, saying, without elaboration, that he had not robbed any of the three victims. On cross-examination, he acknowledged that, when he was arrested, there was a silver handgun under the driver's seat of his vehicle "similar" to that which earlier had become an exhibit in his trial, as well as a check bearing the name "Jean Sinclair." He said that the pistol was "already" under the driver's seat when he got into the car and that the gun was his. The check was put underneath the driver's seat by Arkeesha Martin, but he had "no idea" where she had gotten it. Defendant said that the vehicle he was operating was a maroon four-door Oldsmobile. He said that he had given Martin a ride to the grocery store and the check cashing store and had parked his car in front of the grocery store because she had gone there first.

## ANALYSIS

On appeal, Defendant argues that the evidence is insufficient to support the convictions, that the trial court erred in allowing hearsay testimony as to the robbery of Jean Sinclair, and that the court erred in sentencing.

### I. Sufficiency of the Evidence

Defendant claims that the evidence is insufficient to support his convictions based upon his argument that the convictions cannot stand unless this court "determines that the evidence, if believed by the jury, would convince the average mind of the defendant's guilt beyond a reasonable doubt."

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge,

accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State*, 212 Tenn. 464, 473, 370 S.W.2d 523, 527 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2003). The offense is elevated to aggravated robbery if it is accomplished with a deadly weapon or the victim suffers serious bodily injury. *Id.* § 39-13-402(a)(1)-(2). .

Shirley Anderson, one of the victims, testified that, as she was arriving home from church and had pulled her car into the garage, she saw a man standing by the driver's side door, pointing a silver-colored pistol at her. He jerked her door open and told her to give him her purse. She did not move so he grabbed it. Her key ring came apart as they were struggling over it, and he then ran. She testified she had identified a photograph of Defendant as the man who robbed her. By the verdict of the jury, it is obvious that it accredited the testimony of Anderson, believed that her identification of Defendant was sufficient, and disbelieved Defendant's statement that he was not the one who robbed her. We conclude that this evidence is clearly sufficient for a jury reasonably to find Defendant guilty of the aggravated robbery of Anderson.

Michael Konrad, one of the victims, testified that on January 4, 2003, as he was returning home and had driven into his garage, two men, one of whom was armed with a silver pistol, approached him and ordered him to his knees. He complied and the men took his keys and wallet. He saw them leave in a maroon automobile. Konrad identified Defendant both in a photospread and in the courtroom as the robber with the pistol. Based upon this evidence, a jury reasonably could have found Defendant guilty of aggravated robbery.

The proof regarding the third victim, Jean Sinclair, was that she was robbed by a black male just before 3:00 p.m. on January 15, 2003. The offense occurred after the victim parked her car behind her condominium. The perpetrator hit the victim on the head with a silver handgun, took the victim's purse, and ran away.

Later that afternoon, Arkeesha Martin attempted to cash a check on the victim's checking account a Cash Depot. This woman was linked to Defendant, who was sitting in a parked car outside of the Cash Depot. A search of the vehicle resulted in the seizure of a silver colored (chrome) handgun and a crumpled check, which belonged to the victim, in the driver's side area of the vehicle.

Defendant testified that he owned the handgun found in the car, that he loaned the car to Ms. Martin earlier in the day, and that he had no knowledge about the robbery of Ms. Sinclair and no knowledge that Ms. Martin had attempted to cash a stolen check.

The jury obviously accredited the testimony of the State's witnesses and rejected Defendant's testimony. Circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987). Defendant correctly argues that when the State's case is based entirely upon circumstantial evidence, the evidence must exclude every other reasonable theory or hypothesis other than guilt. *Id.* at 900. Defendant's theory that some other black male committed the robbery of Ms. Sinclair, and that Ms. Martin put Ms. Sinclair's check inside Defendant's car without his knowledge, exists only because of Defendant's testimony. The jury weighed the evidence and chose what testimony to credit and discredit. Clearly, the jury discredited Defendant's testimony. Likewise, his theory of what happened , even if it was "reasonable," was excluded by circumstantial evidence. Defendant is not entitled to relief on the issue.

## II. Hearsay Testimony of Jean Sinclair

As to Jean Sinclair, Officer Goines testified that she told him she had been robbed by a man with a silver pistol and that the man had taken her purse. Approximately two hours later, Defendant was waiting in his vehicle as Arkeesha Martin tried to cash an unsigned check from the victim's checkbook. After being turned down because the check was unsigned, Martin left and later returned with the check, which then was signed. Police officers were called and found Defendant and his vehicle, which contained a silver pistol and the blank check of Jean Sinclair under the floormat on the driver's side.

Defendant asserts that the trial court erred in allowing Officer Goines to testify as to Jean Sinclair's statement to him about being robbed. Ms. Sinclair made the statement to Officer Goines on the day of the robbery. Apparently, Ms. Sinclair died of causes unrelated to the robbery prior to the trial. Defendant argues that allowing Goines to testify regarding Ms. Sinclair's statement was contrary to the holding in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004) as well as Article I, Section 9 of the Tennessee Constitution, in that it violated his right to confront his accuser. Defendant also argues that the statement was, in any event, inadmissible because it did not fall within the "excited utterance" exception to the rule prohibiting hearsay evidence. The State argues that Defendant's rights were not violated because admission of the statement fell under the excited utterance exception to the rule against hearsay, *see* Tenn. R. Evid. 803(2), and that the statement does not violate Defendant's constitutional right to confrontation of a witness.

-6-

We conclude that Defendant has waived any objection to Officer Goines' testimony on the grounds that it violates *Crawford v. Washington* because he failed to raise this objection at trial and in his motion for a new trial. *See* Tenn. R. App. P. 3(e). Our rules of appellate procedure provide that an issue may not be raised for the first time on appeal. Tenn. R. App. P. 36(a). As such, Defendant's failure to raise this objection either at trial or in his motion for new trial precludes him from doing so now. Because the issue is waived, it may be considered only if plain error exists. Rule 52(b) of the Tennessee Rules of Criminal Procedure provides that "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." On these facts however, we decline to address plain error. Defendant is not entitled to relief on this issue.

Although Defendant failed to object pursuant to *Crawford* at trial, he did object on the grounds that Officer Goines testimony was hearsay and therefore inadmissable. The State maintained that the testimony was admissible because Ms. Sinclair's statements to Officer Goines were excited utterances constituting an exception to the rule against hearsay. *See* Tenn. R. Evid. 803(2).

An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *See* Tenn. R. Evid. 803(2). Pursuant to Rule 803 of the Tennessee Rules of Evidence, an "excited utterance" is an exception to the general rule excluding hearsay evidence. Tenn. R. Evid. 803(2). In order for a statement to be admissible under this exception, (1) there must be a startling event or condition, (2) the statement must relate to the startling event or condition, and (3) the statement must be made while the declarant is under the stress or excitement from the event or condition. *State v. Dellinger,* 79 S.W.3d 458, 486 (Tenn. 2002) (citing *State v. Gordon*, 952 S.W.2d 817, 820 (Tenn.1997)). Additionally, "[i]t is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion. "*Bellinger*, 79 S.W.3d at 486 (citing *State v. McLeod,* 937 S.W.2d 867, 871 (Tenn. 1996)).

In the present case, the trial court admitted Ms. Sinclair's statements as excited utterances based on the context and nature of the statements as testified to by Officer Goines during the jury-out hearing on the matter. Based on that testimony, the court properly found that the robbery qualified as a startling event. The proof showed that Ms. Sinclair was "crying, shaking, [and] was not able to speak" when Officer Goines arrived at the scene of the robbery. This evidence supports a finding that her statements related to the startling event and were made while she was under the stress of the event. Thus, the trial court properly admitted the statements under Rule 803(2). Defendant is not entitled to relief on this issue.

## III. Sentencing

Defendant argues that the trial court erred in sentencing, as to the length of the sentences and by ordering that two of the sentences be served consecutively.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); *State v. Bonestel*, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-103, -210 (2003); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401, Sentencing Commission Cmts.; *Ashby*, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

In sentencing Defendant, the trial court, reviewing the presentence report, considered at length the sentencing principles set out in the Criminal Sentencing Reform Act of 1989, as well as the relevant facts, arguments of counsel, statement of the defendant, and presentence report, and determined which enhancement and mitigating factors applied.

According to the presentence report, Defendant was 20 years old and a high school graduate. He said that he had five previous employers but could not recall the dates he was employed. The report showed that he had four prior convictions for aggravated robbery as well as a conviction for assault. The court applied as an enhancement factor the fact that he had five prior convictions and found no mitigating factors that were applicable. On appeal, Defendant argues that the trial court should have applied, as mitigating factors, his youth, his apparent lack of a juvenile record, his

having graduated from high school and attended community college, his having been employed at several jobs, and his having family members living in Memphis. All of this, according to Defendant's brief, "suggests that Defendant has a foundation that will enhance his potential for rehabilitation."

We conclude that the trial court properly considered the principles of sentencing and the record supports the setting of Defendant's sentences. Although only 20, he has a substantial record of convictions for serious felonies. Even if the trial court erred in not applying the mitigating factors urged on appeal, which we note were not argued before the trial court, they would have been entitled to little weight.

Finally, we will consider the decision of the trial court that the sentences for two of Defendant's three convictions should be served consecutively. In this case, the trial court was required to find by the preponderance of the evidence that at least one of seven criteria in Tennessee Code Annotated section 40-35-115 was met. *See* T.C.A. § 40-35-115. Here, the trial court applied criterion (4): "The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *Id*. § 40-35-115(b)(4). Criterion (4) has been specifically discussed by our supreme court in *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), where the court held:

> [T]he imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

*Id*. at 939. This requirement of additional findings has been limited to criterion (4). *See State v. Lane*, 3 S.W.3d 456, 460-61 (Tenn. 1999).

In determining that two of Defendant's sentences should be served consecutively, the trial court noted that all three victims were "elderly" and had been followed to their homes by the defendant. To the court, this showed that Defendant had "little or no regard for human life . . . and no hesitation about committing a crime when the risk to [the victims] is very high," showing that he was a "dangerous offender." As for the need to incarcerate Defendant for an extended period of time to protect society, the court found that Defendant had "expressed and shown a complete lack of societal skills and living in society." Further, the court found that incarceration for an extended period was necessary because Defendant had "been convicted of seven separate aggravated robberies of elderly people accosting them at their homes after stalking them and following them home and then robbing them of their property."

We conclude that the record supports the determination of the trial court that two of Defendant's sentences should be served consecutively.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE