IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 8, 2006

## STATE OF TENNESSEE v. ALONZO LADON MASON

**Appeal from the Criminal Court for Bedford County**
**No. 15680     Lee Russell, Judge**

_____

### No. M2005-01929-CCA-R3-CD - Filed April 20, 2007

_____

The defendant, Alonzo Ladon Mason, appeals from his Bedford County Criminal Court jury conviction of possession of a handgun by a convicted felon. He claims that the trial court erred in admitting a 9-1-1 tape recording into evidence and that the verdict is not supported by legally sufficient evidence. Because we disagree, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

N. Andy Myrick, Fayetteville, Tennessee, for the Appellant, Alonzo Ladon Mason.

Robert E. Cooper, Jr., Attorney General & Reporter; Preston Shipp, Assistant Attorney General; Charles F. Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

Testimony at trial showed that on July 8, 2004, at about 9:00 p.m., Shelbyville police officers went to 701 Deery Street in response to a dispatch that the defendant was involved in shots being fired at that location. After arriving at the Deery Street location, the officers learned that the defendant had driven away in a white Chevrolet Lumina and probably went to East Lane Trailer Park. An officer went to East Lane Trailer Park, found the Chevrolet Lumina, and discovered the defendant and a young woman, Shateka Bowen, walking away from the car. When the defendant saw the patrol car, he turned and walked quickly back to the rear of the Chevrolet, but his movements at the rear of the car were obscured from the policeman's view by bushes. The defendant then walked to a nearby mobile home and tried to enter when the officer ordered him to stop. The officer detained the defendant but found no weapons on his person. A search of the ground around the Chevrolet, however, revealed a loaded nine-millimeter semi-automatic pistol

lying "[a]bout three or four feet from the passenger side rear bumper." The pistol was dry, although it lay in wet grass. The pistol was not registered to the defendant.

The State introduced into evidence the audiotape of a call received by the Bedford County Communication Center (9-1-1 center), on the evening of July 8, 2004. On the tape, a caller informed the 9-1-1 center that "Alonzo Mason [is] shooting guns at 701 Deery Street; come pick his ass up before somebody kill [sic] him." The caller stated that the defendant was "[d]riving a white [Chevrolet] Lumina; him and a girl named Teka." The caller added, "[w]e ducked when they shot . . . [m]y granny sitting [sic] right here in this chair. Lock his ass up before somebody kill [sic] him." The parties stipulated that prior to July 8, 2004, the defendant "had been convicted of the type of felony which prohibited him from possessing a handgun."

The defendant did not testify in his defense.

In his first issue, the defendant claims that the trial court erred in denying his pretrial motion *in limine* to exclude the 9-1-1 audiotape. He had moved to exclude the tape from evidence on grounds that its admission would violate the hearsay rule.[1] The State claimed that the statements made by a caller on the tape were not hearsay, and even if they were, they were admissible as a hearsay-rule exception for excited utterances. The trial court denied the motion but ruled the 9-1-1 tape could only be used to explain the officers' actions and not to demonstrate the defendant's possession of a handgun.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801 (c). "Hearsay is not admissible except as provided by these rules or otherwise by law." *Id.* 802. The Tennessee Rules of Evidence provide exceptions to the general rule of inadmissibility of hearsay. For instance, a hearsay "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible. *Id.* 803(2).

The determinations whether a statement is hearsay and whether a particular hearsay-rule exception applies is a question of law, which we review de novo. *Donald Wallace v. State*, No. M2004-02976-CCA-RM-PC, slip op. at 4 (Tenn. Crim. App., Nashville, Jan. 31, 2005), *perm. app. denied* (Tenn. 2005).

Upon our de novo review, we hold that the trial court erred in admitting the 9-1-1 tape statements of an out-of-court declarant; however, we also hold that the error was harmless.

The State argues the caller's statements are not hearsay because they were not offered to prove the truth of the matters asserted but rather to explain the officers' actions in looking for and detaining the defendant. *See, e.g., State v. Michael S. Reid*, No. M1999-00305-CCA-R3-CD, slip

---

[1] The defendant does not present a claim that the admission of the 9-1-1 recording violates his constitutional right of confrontation.

op. at 4 (Tenn. Crim. App., Nashville, July 12, 2000) (approving the admissibility of a statement that "explain[ed] the officer's actions in allowing the appellant to leave after the first stop, even though the officer believed that the appellant was driving under the influence" and stating, "Because the testimony was not offered to prove the truth of the matter asserted, it is nonhearsay and admissible."). We are unpersuaded. First, we know that the testimony of the officers had already established, without objection, that they went to 701 Dreary Street because they had been told the defendant was involved in firing a gun and that upon arriving there they were informed that the defendant had driven away from the scene in a white Chevrolet Lumina, and that he could be found at the East Lane Trailer Park. The additional facts imparted by the 9-1-1 tape – that the defendant shot at people sitting on a porch, including someone's grandmother – were superfluous to an understanding of the officers' reasons in locating and detaining the defendant. Thus, despite the court's ruling and admonitory instructions, we believe that the real reason and effect of the State's use of the 9-1-1 tape was to inform the jury that the defendant had shot at some people sitting on a porch, and in that view of the evidence, it was used to show the truth of the matters asserted. At any rate, even if we treated the evidence as nonhearsay because it legitimately informs the jury about the actions of the policemen, we do not see the relevance of such testimony to the issues at trial, given the information that had already been imparted through the officers' testimony. *See* Tenn. R. Evid. 401, 402 (generally prohibiting the admission of irrelevant evidence).

Next, we turn to the State's argument that the statements on the 9-1-1 tape, if hearsay, were nonetheless admissible through the "excited utterance" exception to the hearsay rule of exclusion. *See id.* 803(2). To clear the way for admission as an excited utterance, a startling event or condition must be the catalyst for the excitement; second, there must be a nexus between the statement and the startling event; third, the utterance must be forthcoming while the declarant is under the stress of excitement from the event or condition. *See State v. Gordon*, 952 S.W.2d 817, 820 (Tenn. 1997). In the present case, no startling event was ever established, except through the "bootstrap action" of the extrajudicial statement itself.

We are aware that, in federal common law, a "bootstrapping rule" had been established as an impediment to admitting hearsay evidence when the "hearsay would lift itself by its own bootstraps to the level of competent evidence." *Glasser v. United States*, 315 U.S. 60, 74-75, 62 S. Ct. 457, 467 (1942) (applying the rule to hearsay evidence offered pursuant to the co-conspirator exception to the common law hearsay rule). We are also aware that the United States Supreme Court later held in *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775 (1987), that the adoption of the Federal Rules of Evidence, specifically Rule 104(a), altered the bootstrapping rule, at least in co-conspirator cases. *Id.* at 177-78, 107 S. Ct. at 2780;*see* Fed. R. Evid. 104(a) (providing that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court[, which] is not bound by the rules of evidence except those with respect to privileges");*see also* Tenn. R. Evid. 104(a) (using comparable language to federal Rule 104(a)). The *Bourjaily* Court said, "A *per se* rule barring consideration of [co-conspirator] hearsay statements during preliminary factfinding is not . . . *required*." *Bourjaily*, 483 U.S. at 180, 107 S. Ct. at 2781 (emphasis added). "[A] court, in making a preliminary factual determination under [the co-

conspirator hearsay exception], *may* examine the hearsay statements sought to be admitted." *Id.* at 181, 107 S. Ct. at 2781 (emphasis added).

On the particular facts in the present case, the 9-1-1 tape, although itself reviewable for possible admission via the excited-utterance hearsay exception pursuant to Tennessee Rule of Evidence 803(2), did not intrinsically bear the mark of reliability, *see id.* at 179, 107 S. Ct. at 2781 (commenting that "out-of-court statements are . . . *presumed* unreliable), and no other evidence showed that the startling even occurred. In short, the hearsay statement offered was very possibly contrived to prejudice the defendant instead of spontaneously reacting to a startling event.[2]

Thus, we hold that the trial court erred in admitting the 9-1-1 tape. We also hold, however, that the error is harmless and is not reversible. *See* Tenn. R. Crim. App. 52(b). Prior to introducing the 9-1-1 tape statements, the jury had already heard that the defendant was being sought in connection with shooting a gun on Deery Street and that he drove away from that location in a white Chevrolet Lumina, probably bound for the East Lane Trailer Park. In our view, this evidence combined with the circumstantial evidence of the defendant's possession of the handgun at the trailer park, ensured the defendant's conviction. We cannot say that an exclusion of the statements from the 9-1-1 tape would have caused a different result at trial.

In his second issue, the defendant claims that the circumstantial evidence of his guilt of possessing a handgun is insufficient to support his conviction of that offense.

When an accused challenges the sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,

---

[2] Although, as we have pointed out, the defendant has not pinned his claim to exclude the 9-1-1 call from evidence on the Sixth Amendment Confrontation Clause, we see indications that the evidence may have been excludable on this basis, as well. Considering the accusatory tone of the 9-1-1 call, we cannot help but be reminded that the United States Supreme Court, in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), distinguished between "nontestimonial" and "testimonial" hearsay evidence, for purposes of the confrontation clause. *Id.* at 50-55, 124 S. Ct. at 1363-67. Nontestimonial hearsay evidence may be admissible based upon applicable hearsay exceptions, but when "testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, l24 S. Ct. at 1374. Testimonial statements are those made by "'witnesses' against the accused . . . who 'bear testimony,'" including statements, such as those given to police interrogators, which are unsworn and extrajudicial. *Id.* at 51, 124 S. Ct. at 1364. Testimonial statements are "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* When a 9-1-1 call describes completed events from which the danger has subsided – as opposed to events contemporaneously occurring – and evidences the caller's "comprehension of the significance of her [or his] words, . . . such that the 'declarant[ ] would reasonably [have] expect[ed] [them] to be used prosecutorially,' the content of the call may be testimonial. *State v. Maclin*, 183 S.W.3d 335, 352 (Tenn. 2006); *see also Davis v Washington*, ___ U.S. ___, 126 S. Ct. 2266 (2006). In the present case, the 9-1-1 caller may have been describing a completed event and, in any event, identified the defendant by name, vehicle, and companion and actively sought the defendant's arrest. If these factors define the call as testimonial, the lack of an opportunity to cross-examine even an unavailable declarant yields the statement inadmissible pursuant to the Confrontation Clause.

Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979), regardless whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence, *State v. Winters*, 137 S.W.3d 641, 654-55 (Tenn. Crim. App. 2003), *perm. app. denied* (Tenn. 2004). The appellate court neither re-weighs the evidence nor substitutes its inferences for those drawn by the trier of fact. *Id.* at 655. The credibility of the witnesses, the weight and value of the evidence, and all other factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The appellate court affords the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

A crime may be established by direct evidence, circumstantial evidence, or a combination of the two. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987). Before an accused may be convicted of a criminal offense based upon circumstantial evidence, the facts and the circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." *State v. Crawford*, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). "A web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Id.* at 484, 470 S.W.2d at 613.

The sufficiency of the convicting evidence must be examined in light of all the evidence presented to the jury, including that which is improperly admitted. *See State v. Longstreet*, 619 S.W.2d 97, 100-01 (Tenn. 1981).

"A person commits an offense who possesses a handgun and: (A) Has been convicted of a felony involving the use or attempted use of force, violence or a deadly weapon; or (B) Has been convicted of a felony drug offense." T.C. A. § 39-17-1307(b)(1) (2003).

In the present case, the parties stipulated that the defendant, prior to the date of the present offense, had been convicted of a felony that would trigger the prohibition of section 39-17-1307(b)(1).[3] The evidence at trial established that the gun found in the grass near the Chevrolet was a handgun. Thus, the only issue of sufficiency is whether the defendant possessed the gun. The evidence establishing possession is entirely circumstantial, but in our view, it suffices to support the conviction.

When the defendant saw the patrol car approaching in the trailer park, he abruptly halted his approach to a mobile home, turned, and walked quickly to the rear end of the Chevrolet. After a pause when he was not visible to the officers, he resumed his walk to the mobile home, but the officer detained him before he entered the home. Shortly afterward, the officer found the handgun in the grass within four feet of the rear of the white Chevrolet. Although dew had

---

[3] The State's pretrial notices of enhancement and for impeachment stated that the defendant had previously been convicted of aggravated assault and aggravated burglary.

accumulated on the grass, the skyward-facing side of the gun was dry. From these circumstances, the trier of fact could infer that the defendant possessed the handgun.

Any doubt we may have about the sufficiency of these circumstances to establish guilt is dispelled by the unchallenged admission of evidence via the officers' testimony that, before the defendant was detained at the trailer park, he was involved in the firing of gunshots on Deery Street and left that location in a white Chevrolet. We recognize that, had the defendant challenged this testimony, the State may have claimed that it was admissible only to show why the officers went to the trailer park and detained the defendant; however, the absence of an objection to the apparent hearsay evidence paves the way for the trier to fact to utilize the evidence substantively and apply it to ultimate issues in the case. *State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000) ("When a party does not object to the admissibility of evidence, though, the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its 'natural probative effects as if it were in law admissible.'"). Thus, the evidence that the defendant had been accused of shooting a gun earlier in the evening buttresses the inferences of his later possession of the gun.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE