IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 14, 2008 Session

## STATE OF TENNESSEE v. ZENDALL EDWARD CAMPBELL

Appeal from the Criminal Court for Campbell County
No. 12551   E. Shane Sexton, Judge

No.  E2007-02819-CCA-R3-CD Filed April 16, 2009

Appellant, Zendall Edward Campbell, was indicted by the Campbell County Grand Jury for one count of first degree murder and one count of aggravated assault.  After a jury trial, Appellant was found guilty of second degree murder and aggravated assault.  Appellant was sentenced to an effective sentence of twenty years.  On appeal, Appellant complains that: (1) the trial court improperly denied Appellant the opportunity to admit the statements he gave to police immediately following the incident and after his arrest; (2) the trial court erred by failing to include reckless endangerment as a lesser included offense of aggravated assault; and (3) the evidence was insufficient to support a conviction for second degree murder.  After a review of the record, we determine that the trial court properly excluded Appellant's statements, instructed the jury properly on the lesser included offenses of aggravated assault, and the evidence was sufficient to support the second degree murder conviction.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Michael G. Hatmaker, Jacksboro, Tennessee, for the appellant, Zendall Edward Campbell.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William Paul Phillips, District Attorney General, and Michael O. Ripley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the evening of March 17, 2005, Appellant came home from work and had a few beers before he and his wife, Doris, went to the Silver Dollar Bar on Stinking Creek Road in LaFollette, Tennessee, about four or five miles away from their home on Melvin Hollow Road.  They arrived at the bar at around 7:00 p.m.

Benny Thomas, the owner of the bar, arrived at around 7:45 p.m. When he arrived, he noticed that Appellant "had a buzz going, you know; he was a little high on alcohol." Mr. Thomas said that Appellant was not "intoxicated" at the time but "was pretty high later" that night. Mr. Thomas also saw Appellant's sister, Shannon Perkins, at the bar. Ms. Perkins lived right down the road from Appellant in a trailer on the same property.

Shannon Perkins was married to Jason Rhodes, the victim. The couple had been married for approximately five months but had recently separated. Ms. Perkins had made arrangements to meet Mr. Rhodes at the bar that evening. Mr. Rhodes arrived at the bar that night at around 9:00 p.m. He was accompanied by David Hall. The men were celebrating Mr. Hall's birthday and hung out for most of the day before getting to the bar. Throughout the day, the men had consumed a few beers, took some prescription pain medication, and smoked marijuana.

Ms. Perkins sat at the bar with Mr. Rhodes and Mr. Hall. Ms. Perkins took four Xanax pills that were given to her by Mr. Rhodes. Apparently, Mr. Rhodes offered by buy Appellant a six-pack of beer, but Appellant told Mr. Rhodes that he did not want his beer. Appellant appeared angry with Mr. Rhodes. There was an argument between Appellant, Mr. Rhodes, and Mr. Hall. Mr. Thomas witnessed the confrontation in which he heard Appellant ask Mr. Rhodes, "Where was that gun that he bought to shoot him with." Mr. Rhodes replied, "I didn't buy no gun to shoot you with."[1] Mr. Thomas allowed the men to squabble for a few moments before breaking them up. Mr. Thomas heard Appellant threaten the victim during this argument but did not witness any other confrontations between the men that evening. Mr. Hall heard Appellant challenge Mr. Rhodes to go outside and fight. Mr. Rhodes and Mr. Hall left the bar for a short time around 10:00 p.m. to smoke a marijuana cigarette. After they returned, Mr. Thomas received a telephone call from Teresa Lay. Ms. Lay claimed to have seen Mr. Rhodes "put a gun in his - - on him" and that he needed to watch out. Mr. Thomas confronted Mr. Rhodes, who claimed that he did not have a gun on his person but had a gun in the truck.

Mr. Hall and Mr. Rhodes were seen leaving the bar close to closing time, 12:00 a.m. When Mr. Rhodes and Mr. Hall left the bar, they rode to Ms. Perkins's trailer in Mr. Hall's truck. Inside Ms. Perkins's trailer, Mr. Hall sat down in a chair directly in front of the door while Ms. Perkins and Mr. Rhodes went into the kitchen to talk.

Appellant and his wife left the bar together around 11:40 p.m. and returned to their house on Melvin Hollow Road. After Appellant had been home for about twenty-five minutes, he heard a strange vehicle come up the road and then go toward Ms. Perkins's home. Appellant took his unloaded .270 rifle and grabbed five shells off of the table. According to Appellant, there had been

---

[1]According to Ms. Perkins, earlier that week Mr. Rhodes got into an argument with Emma Campbell, the mother of Appellant. During this argument Mr. Rhodes made statements to Mrs. Campbell that Appellant disliked. Several days after that argument, Mr. Rhodes called Ms. Perkins to tell her that he had purchased a gun. Mr. Rhodes also called Ms. Perkins to tell her that he was going to go to the Silver Dollar Bar where he knew Appellant frequently hung out.

several break-ins in the area, and he was afraid that the unfamiliar vehicle may contain burglars. Appellant took the rifle, got into his truck, and drove down the hill to Ms. Perkins's house where he pulled in at an angle beside the unfamiliar pick-up truck.

Appellant exited the truck and was about to start loading the rifle when he heard Ms. Perkins say "come in." Mr. Hall claimed that Appellant walked into the house without knocking, brandishing the rifle. Mr. Hall stood up when he saw the rifle and placed his hands up. Appellant asked Mr. Hall if he "want[ed] some of this," then struck him across the left jaw with the rifle. Mr. Hall fell to the ground and blacked out.

When Mr. Hall came to, he heard scuffling and arguing in the room. Then he heard a gunshot. Soon thereafter, he saw Mr. Rhodes walking toward the door, so Mr. Hall got up and exited the trailer ahead of Mr. Rhodes and Ms. Perkins. Mr. Hall went to sit in his truck.

According to Appellant, when he entered the trailer, Mr. Rhodes was holding onto Ms. Perkins by the arms, refusing to let her go. Appellant fired a "warning" shot through the ceiling and told Mr. Rhodes to "turn her loose" and leave the house. Mr. Rhodes would not comply so Appellant fired a second shot. The men started to scuffle, and Appellant struck Mr. Rhodes with the butt of the rifle. Mr. Rhodes was knocked to the ground. When Mr. Rhodes got up, he said that he "had enough" and claimed that it was "over." Appellant told Mr. Rhodes that he was going to "mash [Mr. Rhodes's] mouth for what you done [sic] to my mommy." At this point, Appellant claimed that the argument was over.

Appellant, Ms. Perkins, and Mr. Rhodes went outside toward their vehicles. Mr. Hall was already sitting in the driver's side of his truck. Mr. Rhodes got in on the passenger side. Appellant was still brandishing the rifle. Appellant came down the steps and walked around to the passenger side door of the truck. Appellant claimed that he saw Mr. Rhodes reach into the right side of his belt for a pistol with a brown handle. Appellant claimed that he then shot victim in self defense. Mr. Hall, on the other hand, claimed that when Appellant exited the trailer he told Mr. Rhodes "I told you if you came back, I would kill you." At that time, Mr. Hall stated that Appellant shot the victim and killed him. Appellant then told Mr. Hall to leave.

Mr. Hall claimed that Appellant threatened to kill him too. According to Mr. Hall, Appellant:

[W]ent to the front of the truck and as I went to the front, [Appellant] was coming around the front, and I would go around the back trying to keep the truck in between me and [Appellant] and the gun. And I was begging [Appellant], you know, not to shoot me. I told him I had two kids and I didn't want them to grow up without a father, you know. If he would just let me out of there, I would never come back. And he said, "See that you don't." And he got in his truck and went on up the hill.

After shooting Mr. Rhodes, Appellant left the scene and went back to his trailer. He told his family to call the "law." Deputy Charles Scott of the Campbell County Sheriff's Department was notified by the 911 dispatcher that Sergeant Carl Mozingo needed his assistance on Melvin Hollow Road in response to a shooting. Deputy Scott arrived on the scene at approximately 1:00 a.m. on March 18, 2005. Appellant was at his home, about 300 yards away from the crime scene. Appellant's son, Lonnie Campbell, met the officers at the door and informed them that Appellant was "inside, that everything was okay, [Appellant] had the rifle put up." Mr. Campbell invited the officers inside the house. Mr. Campbell then went into another room of the house, retrieved a rifle, and handed it over to the police.

Appellant was read his *Miranda* rights and accompanied the officers to the crime scene. While at the scene, the officers asked Appellant some questions. The conversation was recorded by the officers.

Deputy Larry Bolton also responded to the call for assistance. He went directly to the crime scene at 742 Melvin Hollow Road, the residence of Ms. Perkins. He observed a red, Chevrolet S10 pickup truck that was parked in close proximity to the steps of the front porch. The victim, Mr. Rhodes, was in the passenger seat of the truck, and his body was covered with a blue blanket. There was an unfired gun in the waistband of the victim's pants. Upon investigation, Deputy Bolton noticed that there was blood underneath the handgun.

Dr. Darinka Mileusnic-Polchan performed the autopsy on the victim. She determined that the main cause of death was a shotgun wound through the victim's head from a high velocity rifle. Dr. Mileusnic-Polchan stated that based on the circular burn pattern on the victim's skin, the barrel of the weapon that produced the injury was fired from a maximum of two to three feet away.

Appellant was indicted by the Campbell County Grand Jury in June of 2005 for first degree murder in the death of the victim and aggravated assault for the injuries inflicted on Mr. Hall. At the conclusion of a jury trial, Appellant was found guilty of second degree murder and aggravated assault. The trial court ordered Appellant to serve twenty years in incarceration for second degree murder and five years in incarceration for aggravated assault. The sentences were ordered to be served concurrently, for a total effective sentence of twenty years. After the denial of a motion for new trial, Appellant sought a review of his convictions in this Court. On appeal, the following issues are presented for our review: (1) whether the trial court improperly excluded Appellant's statements to police after the incident; (2) whether the trial court properly instructed the jury on the lesser included offenses of aggravated assault; and (3) whether the evidence was sufficient to support the conviction for second degree murder.

*Admission of Appellant's Statement*

Initially, Appellant claims that the trial court erred "by not allowing the defendant to introduce his statements that was [sic] given to police officers immediately following the incident." Appellant argues that the denial was an abuse of discretion because the statement given immediately

after the incident was relevant in that it showed Appellant's demeanor, corroborated his testimony, and strengthened his position that the shooting was done in self defense. Specifically, Appellant argues that the trial court should have admitted both of the statements as proof of Appellant's state of mind and as an excited utterance. The State contends that the trial court did not abuse its discretion in excluding the evidence.

At trial, counsel for Appellant attempted to introduce the statements of Appellant made to police. One of the statements was made shortly after the incident took place. It actually consisted of a tape recorded conversation between Appellant and two police officers. The second statement was taken later that evening, after Appellant's arrest for the murder.[2] Counsel for Appellant argued that the statements came in as a "declaration against interest" and under the "state of mind" exception to the hearsay rule. The State objected to the introduction of the statements. The trial court found that neither of the statements "fall in [Rule] 803(2) [of the Tennessee Rules of Evidence]. It's not an admission by a party opponent. The person who is seeking to introduce these statements is the declarant of these out of Court statements which takes it right out of that - - of that exception." Counsel for Appellant then informed the trial court that he wanted to introduce the first statement under the excited utterance exception to the hearsay rule. The trial court informed Appellant that he would have to call the witness who took the statement to the stand. Counsel for Appellant indicated that he understood that requirement. Both of the statements were marked for identification at that time. Counsel for Appellant did not revisit the admissibility of the statements during Appellant's case-in-chief.

To be admissible, evidence must satisfy the threshold determination of relevance mandated by Tennessee Rule of Evidence 401. *See, e.g., State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Tenn. R. Evid. 403; *see also Banks*, 564 S.W.2d at 951.

A statement is hearsay if it is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). For a hearsay statement to be admissible, it must fall within the hearsay exceptions provided by Rule 803 of the Tennessee Rules of Evidence.

Appellant argues that the contested hearsay statement is admissible under the state-of-mind hearsay exception. *See* Tenn. R. Evid. 803(3). However, in order for Appellant's statement to be admissible under the state-of-mind hearsay exception, the statement would not be a mere factual assertion offered to prove the truth of the matter asserted, as in the instant case, but it would express "the declarant's then existing state of mind, emotion, sensation, or physical condition[,] (such as intent, plan, motive, design, mental feeling, pain, and bodily health) . . . ." Tenn. R. Evid. 803(3).

_____

[2]Curiously, on appeal Appellant does not address how this statement was admissible.

After reviewing the statement, it is apparent that the statement does not qualify for admission because it is a statement regarding past conduct, not a statement of Appellant's present state of mind. In the statement, Appellant told police that he told the victim to leave, saw the victim reach for his gun, shot the victim, and was "sorry" he "killed the boy" but did so because the victim "threatened" him. These statements are statements regarding conduct and observations on the part of Appellant. These are not statements that express Appellant's sensations, emotions, or motivations at the time of the incident.[3]  Accordingly, the statement was not admissible under this hearsay exception.

Further, the statement is not admissible as an excited utterance. Appellant did not present the testimony of the officer who took the statement and did nothing to show that the statement was given "while the declarant was under the stress of excitement caused by the event." Tenn. R. Evid. 803(2).

> To qualify as an excited utterance, three criteria must be met: (1) there must be a startling event or condition that causes the stress or excitement; (2) the statement must relate to the startling event or condition; and (3) the statement must be made while the declarant was under the stress or excitement caused by the startling event or condition. *State v. Gordon*, 952 S.W.2d 817, 820 (Tenn. 1997); *State v. Samuel*, 243 S.W.3d 592, 600 (Tenn. Crim. App. 2007); *see also* [Neil P. Cohen et al.] *Tennessee Law of Evidence* § 8.07[3][b] to [3][d], at 8-75 to 8-78 [(5th ed. 2005)].

*State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). Appellant did not introduce any proof at trial to show that his statements were excited utterances. Without evidence to prove that the statement was actually an excited utterance, the trial court properly excluded the statements. We determine that the trial court did not abuse its discretion in excluding the statements. Appellant is not entitled to relief on this issue.

*Jury Instructions*

Next, Appellant complains that the trial court improperly instructed the jury. Specifically, Appellant complains that the trial court committed plain error by not providing the jury with an instruction on felony reckless endangerment as a lesser included offense of aggravated assault. Appellant concedes that he did not seek the instruction in writing, pointing out that the trial court deemed it unnecessary because the discussion about lesser included offenses was held on the record. The State argues that because Appellant failed to request the instruction in writing and failed to object to the jury instructions at trial, according to *State v. Page*, 184 S.W.3d 223 (Tenn. 2006), the issue is waived.

---

[3]While the statement that Appellant was "sorry" does relate to the Appellant's state of mind, it relates to that state of mind following the incident and is irrelevant.

Tennessee Code Annotated section 40-18-110 requires the defendant to request lesser included offense instructions in writing at trial in order to subsequently appeal a trial court's failure to instruct on such offenses. Tennessee Code Annotated section 40-18-110 states, in pertinent part:

(b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

In *Page*, the Tennessee Supreme Court determined that Tennessee Code Annotated section 40-18-110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for a new trial or on appeal." *Page*, 184 S.W.3d at 229. However, the court went on to note that appellate courts were not precluded from reviewing the issue sua sponte under the plain error doctrine. *See id.* at 230.

The record on appeal shows that trial counsel failed to request lesser included offense jury instructions in writing. The trial court held a discussion on the record regarding lesser included offense instructions. During this conversation, counsel for Appellant stated that he would put his requests "in writing if the Court deems it necessary." The trial court noted that Appellant agreed with what the trial court was "charging" and found it unnecessary for Appellant to formally request instructions in writing. There was also a discussion in which the trial court noted that the facts of the case would not "justify" a charge on reckless endangerment because there was no bodily injury. Appellant did not object to this characterization or the trial court's conclusion that it would charge reckless aggravated assault and assault as the lesser included offenses of aggravated assault. Thus, Appellant has waived this issue on appeal. *See Page*, 184 S.W.3d at 229.

We now address whether it was plain error for the trial court to fail to give a lesser included offense instruction on aggravated assault, even when Appellant did not properly preserve the issue for appeal. When determining whether plain error review is appropriate, the following five factors must be established:

"(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected;
(d) the accused [must not have waived] the issue for tactical reasons;

-7-

and (e) consideration of the error [must be] "necessary to do substantial justice."

*State v. Terry*, 118 S.W.3d 355, 360 (Tenn. 2003) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted)).

As stated above, Appellant failed to request a lesser included offense instruction on reckless endangerment. Appellant has failed to show that he did not waive this issue for tactical reasons or that an unequivocal rule of law has been breached. Further, "felony reckless endangerment is not a lesser-included offense of aggravated assault committed by intentionally or knowingly causing another to reasonably fear imminent bodily injury by use or display of a deadly weapon." *State v. Moore*, 77 S.W.3d 132, 136 (Tenn. 2002).[4] In the case herein, the indictment alleged that Appellant committed aggravated assault by utilizing a deadly weapon to cause Mr. Hall to reasonably fear imminent bodily injury, as opposed to aggravated assault by causing bodily injury by the use of a deadly weapon. Consequently, the trial court's failure to instruct on felony reckless endangerment does not rise to the level of plain error. Appellant is not entitled to relief on this issue.

### Sufficiency of the Evidence

Lastly, Appellant claims that the evidence was not sufficient to sustain his conviction for second degree murder and that the trial court erred by approving the jury's verdict. Specifically, he claims that he acted in self defense because he had a "reasonable belief" that the victim was going to shoot and kill him. At most, Appellant contends that he committed voluntary manslaughter. The State contends that the trial court properly denied the motion for judgment of acquittal and that the evidence supports the second degree murder conviction.

According to Tennessee Rule of Criminal Procedure 29(b):

> On defendant's motion on its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

This Court has noted that "[i]n dealing with a motion for judgment of acquittal, unlike a motion for a new trial, the trial judge is concerned only with the legal sufficiency of the evidence and not with the weight of the evidence." *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). The standard for reviewing the denial or grant of a motion for judgment of acquittal is analogous to the standard employed when reviewing the sufficiency of the convicting evidence after a conviction has

---

[4]In *State v. Hatfield*, 130 S.W.3d 40 (Tenn. 2004, the Tennessee Supreme Court determined that "[w]hen aggravated assault is charged as being committed by causing bodily injury by use of a deadly weapon, felony reckless endangerment *is* a lesser-included offense under part (b)(2) of *Burns*. . ." (emphasis added).

been imposed.  *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995).

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles.  A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State.  *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).  Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt."  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.*  The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt.  *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75.  In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom."  *See Tuggle*, 639 S.W.2d at 914.  As such, this Court is precluded from reweighing or reevaluating the evidence when considering the convicting proof.  *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence."  *Matthews*, 805 S.W.2d at 779.  Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts.  *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

A conviction for second degree murder requires proof that the defendant unlawfully and knowingly killed another.  T.C.A. §§ 39-13-201, -210(a).  A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.  T.C.A. § 39-11-302(b).  Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence.  *State v. Inlow*, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000); *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993).

At trial, Appellant relied on a defense of self defense to justify the shooting of the victim. Tennessee defines self-defense as follows:

> A person is justified in threatening or using force against another person when, and to the degree, the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force.  The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury.  The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds.  There is no duty to retreat before a person threatens or uses force.

T.C.A. § 39-11-611(a). Self-defense requires a reasonable belief that "force is immediately necessary to protect against the other's use or attempted use of unlawful force" and that there was an "imminent danger of death or serious bodily injury" to the defendant. T.C.A. § 39-11-611(a). When a defendant relies upon a theory of self-defense, the State bears the burden of proving that the defendant did not act in self-defense. *State v. Sims*, 45 S.W.3d 1, 10 (Tenn. 2001). Further, it is well-settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). Upon our review of a jury's rejection of a claim of self-defense, "in order to prevail, the [Appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994).

It is obvious in this case that the jury chose to reject Appellant's claim of self-defense. The testimony concerning the events immediately prior to Appellant's shooting of the victim indicated that they were involved in an altercation that had concluded with the parties going their separate ways. Appellant followed the victim outside, where the victim had already gotten into the passenger seat of the truck. Appellant shot the victim with the rifle at close range. The victim was found to have a weapon but it was still located in the waistband of the victim's pants at the time of his death. In the context of self defense, it is only permissible to use force to "protect against the other's *use or attempted use* of unlawful force." T.C.A. § 39-11-611(a) (emphasis added). Appellant testified at trial that the victim had a weapon, but the jury apparently discredited Appellant's testimony. It was within the jury's purview to reject the self-defense theory. *See State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Further, Appellant's argument is basically an argument about the credibility of the witnesses. Again, the jury is entrusted to resolve questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence. *Pruett*, 788 S.W.2d at 561.

Also in regards to the sufficiency of the evidence for his second degree murder conviction, Appellant contends that the proof, at best, supported a conviction for voluntary manslaughter. Voluntary manslaughter requires proof that the defendant intentionally or knowingly killed another "in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a). The jury is responsible for reviewing the evidence to ascertain whether it supports a finding of adequate provocation. *State v. Williams*, 38 S.W.3d 532, 539 (Tenn. 2001). This theory was presented to and clearly rejected by the jury. We determine that the evidence was sufficient to sustain a verdict for second degree murder. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

JERRY L. SMITH, JUDGE